## WOODS v. CALLAHAN et al.

### No. 4373.

United States Court of Appeals
First Circuit.

Dec. 28, 1948.

Rehearing Denied Jan. 26, 1949.

Benjamin Shulman, Sp. Litigation Atty., of Washington, D. C. (Ed Dupree, Jr., Gen. Counsel, and Hugo V. Prucha, Asst. Gen. Counsel, both of Washington, D. C., on the brief), for appellant.

William E. O'Brine, of Salem, Mass., for appellees.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and PETERS, District Judge.

PETERS, District Judge.

This is an appeal from a judgment for the defendants in an action for damages and restitution brought by the Housing Expediter under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq. Numerous affidavits, requests for admissions and interrogatories were filed by both parties, culminating in a motion for summary judgment by each,—that of the defendants being granted.

The complaint alleges overcharges of rent by the defendants as landlords of two tenements in Peabody, Massachusetts, in the Essex County Defense-Rental Area.

The case turns on the answer to the question as to what was the legal rent for the properties in the critical rent month,— March, 1942.

Section 4 of the applicable rent regulation (8 F.R. 7322, incorporating the provisions of 7 F.R. 8596) provides that "Maximum rents (unless and until changed by the Administrator * * *) shall be: (a) For housing accommodations rented on the maximum rent date [March 1, 1942], the rent for such accommodations on that date."

Section 13(a) (10) of the Regulations provides that " 'Rent' means the consideration, including any bonus, benefit, or gratuity, demanded or received for the use or occupancy of housing accommodations * * *."

"* * * in any litigation where the point becomes relevant the rent which was actually being charged on the freeze date must be factually determined." Kalwar v. McKinnon, 1 Cir., 1945, 152 F.2d 263, 264.

On the critical date the properties were occupied by tenants under written leases which provided for the payment of rent in monthly payments together with taxes to be paid by the tenants. The landlord's registration, later filed, contained similar statements. No change in the rents was made by the Administrator.

The plaintiff alleged, with supporting affidavits from tenants, that the defendant owners did not demand or receive, as part of the rentals for either of the houses,— payment of taxes for a period prior to 1946 including 1942. The defendants on the other hand alleged that the taxes were paid by the tenants.

The plaintiff claims that the dispute between the defendants and their tenants on this point raised a genuine issue of material fact, pending the settlement of

which, a summary judgment was not authorized by Federal Rules of Civil Procedure, rule 56, 28 U.S.C.A. An examination of the record, however, fails to support that claim.

The assertions of fact, made by the tenants in affidavits to the effect, merely, that the taxes they had agreed to pay had not been paid, nor demanded of them, would not be sufficient, even if supported by evidence, to effect a change in the written contracts. No waiver of the terms of the leases was alleged,—one of the tenants expressly stating that he occupied under the terms of his lease,—and the other not mentioning it.

The assertion (denied by the defendants) to the effect that the landlords did not collect the whole rent reserved in the leases, does not raise an issue of material fact. Presumably the landlords were charging for rent the amounts agreed upon and specified in the leases, whether collected or not.

In the absence of any showing of a different agreement or consent on the part of the landlords to a reduction in rent, or of any intentional change in the amount of rent charged, or of any change by the Administrator, the landlords were entitled to rest on the presumption that the leases were continuing without change. They were not obliged at their peril to collect all the rent due them.

The judgment of the District Court is affirmed.

### On Petition for Rehearing.

PER CURIAM.

In a petition for rehearing, the Housing Expediter has attributed to us views which we did not intend to convey in the opinion previously filed in this case. Perhaps this is a consequence of our having written too briefly on a case we thought was clear. So far as we are aware, we are not in disagreement with the Housing Expediter on any point as to the meaning of the regulation; our conclusion, however, was that, on the particular facts appearing in this record, he failed to make out a case for recovery even on his own theory.

We did not disregard § 13(a) (10) of the regulation, defining "rent" as meaning "the consideration, including any bonus, benefit, or gratuity, demanded or received for the use or occupancy of housing accommodations". Of course, when the regulation says in effect that the maximum rent shall be the whole consideration demanded or received for the housing accommodation on March 1, 1942, it does not mean, literally, that there must have been a demand for, or receipt of, rent on that very day. It merely shifts the inquiry back to March 1, 1942, to determine what the housing accommodation was currently renting for at that time. Normally, where there was a written lease, this would be the rent stipulated in the lease; and that was evidently the landlord's understanding in this case, for in her registration statement filed with the OPA in 1942 she reported that the rent on the maximum rent date was $45 and $47.50 per month, respectively, "plus taxes".

Nor did we repudiate OPA Official Interpretation 4(a)—VII (OPA Rent Service, p. 200:1164), reading as follows:

"1. On maximum rent date a house was rented by L to T under a one-year lease which provided that the monthly rent was $40. However, T actually paid and L accepted $35 in full payment of each month's rent during the term of the lease.

"The maximum rent is $35 a month under Section 4(a) of the Housing Regulation. Rent is defined by Section 13(a) (10) of the Regulation as the consideration demanded or received for or in connection with the use or occupancy of housing accommodations. The consideration demanded and received in this case was $35 a month."

The point thus illustrated is that the rent stipulated in the lease is not necessarily conclusive; that in practice, and at least by tacit understanding of the parties, the rent so stipulated may have actually been modified; and that in such case "the true economic bargain between landlord and tenant" on March 1, 1942, to use the Housing Expediter's phrase, is controlling.

The situation presented in the case at bar is quite different from the hypothetical

case put in the above Official Interpretation. There, in actual practice, the landlord waived his right to collect the full monthly rent stipulated in the lease; the tenant actually paid, and the landlord accepted, a lesser sum "in full payment of each month's rent during the term of the lease."

■ In the present case, on the freeze date, March 1, 1942, the tenants were in possession of the two housing accommodations in question, under written leases calling for the payment in advance of $45 and $47.50, respectively, per month, as rent. The leases also contained covenants whereby the tenants agreed to pay "all the taxes and assessments whatsoever" in respect of the demised premises during the term. This additional covenant to pay taxes was part of the "consideration" for the leases, and therefore became part of the "rent" for the housing accommodations on March 1, 1942, by the very terms of the definition of "rent" in § 13(a) (10) of the regulation. In other words, under the binding obligations of the leases, the prevailing rent on the freeze date was not merely the sums specifically denominated as "rent" in the leases, namely, $45 per month and $47.50 per month, respectively, but also the additional variable sums which might be assessed as taxes during the term.

Under § 4 of the regulation, the lawful maximum rents for the accommodations in question (unless and until changed by the Administrator) became the rents for such accommodations on March 1, 1942. The lawful maximum rents were therefore determined by the situation as it existed on that date, and were not affected by possibly indulgent conduct of the landlord in subsequent months or years in not promptly insisting upon timely performance by the tenants of their obligation to pay the taxes.

■ When the tenants paid their stipulated monthly rent of $45 and $47.50, respectively, on March 1, 1942, the landlord could not have demanded more at that time. Real estate taxes were not levied and payable until the latter part of the year. As of March 1, it could not even have been known what those taxes would be. Acceptance by the landlord on March 1, 1942, of the full stipulated monthly rentals then due could not constitute a waiver by the landlord, as of that date, of his contractual right to have the tenants pay the real estate taxes to be levied later in the year. That is the difference between the present case and the supposed case stated in the OPA Official Interpretation above quoted, where the lease in effect on the maximum rent date provided for a monthly rent of $40, but the landlord accepted $35 in full payment of each month's rent during the term of the lease.

It is true that one of the tenants, Cashman, had been in possession under a written lease since September 23, 1939; and according to Cashman's affidavit the landlord had failed to demand either in 1940 or 1941 that he pay the real estate taxes levied for those years. But Cashman does not claim that there was an understanding that he had been relieved of this obligation and that the stipulated monthly rents which he paid for those years were accepted by the landlord as in full payment of the tenant's obligations under the lease. Nor does Cashman assert that, as of March 1, 1942, he held possession under an understanding, tacit or otherwise, that notwithstanding the terms of the written lease he would not be held to pay the real estate taxes later to be levied for the year 1942. On the contrary, Cashman stated in his affidavit that he was in possession on March 1, 1942, "under the terms of" the written lease aforesaid.

There is no sufficient showing that "the true economic bargain between landlord and tenant" on March 1, 1942, was any different from the legal bargain contained in the lease.

The petition for rehearing is denied.