KELTON O. POTTER, trustee, *vs.* BOARD OF APPEALS
OF MANSFIELD.

Bristol.    January 8, 1973. — February 7, 1973.

Present: HALE, C.J., KEVILLE, & GRANT, JJ.

*Zoning,* Board of appeals: decision. *Mandamus.*

A decision of the zoning board of appeals of a town with respect to an
    application for a special permit to construct a multiple dwelling
    complex, duly filed with the town clerk, and stating that "in order to
    preserve the purpose and intent of the [zoning by-law], the recom-
    mendations of the planning board should be met," that "relief may
    not be granted without substantial detriment to the public good,"
    that "it was voted to disapprove the application until revised plans
    are submitted to the planning board and . . . [its] recommendations
    and approval are obtained," and "to not grant" a permit was a final
    decision of the appeals board denying the application. [94-95]
A purported amendment by the zoning board of appeals of a town of a
    decision by it not to grant an application for a special permit "to
    construct a multiple dwelling complex, voted prior to the expiration
    of the appeal period from the decision permitted by G. L. c. 40A, § 21,
    as amended, and stating that the vote was intended to "clarify" the
    decision, that the board approved the application "providing the
    applicant submits a revised plan" complying with certain require-
    ments, and that upon compliance the board would then "issue a
    certificate granting a special permit . . . in accordance with said
    revised plan," was a reversal of the original decision, was ineffective
    as an amendment thereof, had no standing on its own as an entirely
    new decision because of lack of compliance with the notice and
    hearing requirements of c. 40A, §§ 4, 17, and 18, and was an invalid
    commitment by the board to issue a permit on the basis of a plan and
    other evidence not yet before it. [95-97]
Failure of an applicant for a special permit from the zoning board of
    appeals of a town to appeal under G. L. c. 40A, § 21, as amended, from
    the board's decision denying the application precluded the applicant
    from seeking relief by mandamus. [97]

PETITION for a writ of mandamus filed in the Superior
Court on November 18, 1971.

The case was heard by *Mitchell,* J.

*James T. Grady,* Town Counsel, for the respondent.

*Howard J. Alperin (Edward I. Modiste* with him) for the petitioner.

GRANT, J.    This is an appeal by the board of appeals of the town of Mansfield (hereinafter sometimes referred to simply as the board) from a judgment of the Superior Court that a writ of mandamus issue commanding further action by the board on the petitioner's application under the provisions of §§ III D1, III B7, V F1 and V F2 of the Mansfield zoning by-law as then in effect for a special permit[1] for the construction of a multiple dwelling complex. G. L. c. 213, § 1D, as amended. The case is before us on the reported evidence (which consists of various documents and oral stipulations of counsel), the judge's order, and the writ (which was stayed pending appeal). We decide the case on our own judgment (*Iverson* v. *Building Inspector of Dedham,* 354 Mass. 688, 689).

At the time the petitioner filed the application in question the provisions of §§ II A, III D1 and III B7 of the by-law were such that the board, in the exercise of its judgment, could have granted the petitioner a special permit for the construction of a multiple dwelling complex in accordance with the provisions of §§ V F1 and V F2 of the by-law. Among the requirements of § V F1 was one that an applicant file a properly prepared site plan which would show, among other things, the topography of his land and proposed features of the types referred to in paragraphs 1 through 7 and 10 of Appendix B to this opinion. Section V F1 contained further requirements: that the board immediately forward a copy of such plan to the planning board of the town; that both boards consider, among other things, all the features referred to in paragraphs 1 through 10 of Appendix B; that the planning board should report its recommendations in writing to the board of appeals, with

---

[1] See G. L. c. 40A, §§ 4 (as most recently amended by St. 1966, c. 199), 15(2) (as inserted by St. 1954, c. 368, § 2), 17 (as amended through St. 1968, c. 336), and 18 (as amended through St. 1970, c. 271).

such report to become part of the official record of the public hearing to be held by the latter board; that the recommendations of the planning board "shall not be binding" on the board of appeals; that the board of appeals should either approve or disapprove an application within thirty days of the public hearing; and that "[i]f the application is disapproved, the reasons for disapproval shall be listed with appropriate recommendations for correction of deficiencies."

The petitioner's application for a special permit to construct a multiple dwelling complex of sixty-nine units and some form of plan (which is not before us) were filed with the board of appeals on August 3, 1970. That board sent a copy of the plan to the planning board, which, by its written report dated September 14, 1970, recommended that the board of appeals not approve the petitioner's plan. That report stated five respects in which the planning board considered that the plan failed to supply information required by § V F of the by-law and identified eight respects in which it believed the plan should be modified or supplemented. The planning board asked that its comments be incorporated in any decision the board of appeals might make and that it be given an opportunity to review any changes which might be made in the petitioner's plan.

On September 15, 1970, the board of appeals held a public hearing on the petitioner's application which met all the procedural requirements of notice and hearing set out in G. L. c. 40A, §§ 4, 17 and 18, as then in effect. The planning board's report was incorporated into the record of the hearing, and opposition to the application was recorded. On November 3, 1970, the board of appeals rendered the decision which is set out in full in Appendix A to this opinion and under which no permit was issued.[2] A copy of

---

[2] Neither party has noticed and nothing in this case turns on the fact that the board's decision was not rendered within thirty days of the hearing (as required by § V F1 of the by-law) or within sixty days of the filing of the application (as required by G. L. c. 40A, § 18, as amended by St. 1969, c. 870, § 1).

that decision was filed with the town clerk on November 17, 1970.[3]

The petitioner did not appeal to the Superior Court within twenty days or to a District Court within twenty-one days of November 17, 1970, as permitted by G. L. c. 40A, § 21, as amended through St. 1969, c. 706.[4]

On December 1, 1970, which was prior to the expiration of either of the foregoing appeal periods, the board took the action set out in Appendix B to this opinion and which, for the sake of convenience, we shall sometimes refer to as the amended decision. The ten numbered paragraphs of that decision represent a summary of the more salient objections of the planning board as set out in that board's report of September 14, 1970, to the board of appeals. The amended decision was rendered without prior compliance with any of the requirements of notice or hearing then found in G. L. c. 40A, §§ 4, 17 and 18. It does not appear that the amended decision was made part of the record of the hearing held on September 15, 1970. We do not know who was notified of the amended decision, or when (see fn. 3 this opinion), except by the filing of a copy of the decision with the town clerk on January 25, 1971.

On January 25, 1971, the petitioner filed with the board of appeals a revised plan of a multiple dwelling complex which is before us and which the petitioner claims meets all the requirements of the amended decision. At some undisclosed point in time a copy of that plan was transmitted to

[3] Such filing was within the fourteen-day period specified by the sixth sentence of G. L. c. 40A, § 18, as amended by St. 1970, c. 271, which provided as follows: "The board shall cause to be made a detailed record of its proceedings showing the vote of each member upon each question or, if absent or failing to vote, indicating such fact, and setting forth clearly the reason or reasons for its decisions, and of its other official actions, copies of all of which shall be filed within fourteen days in the office of the . . . town clerk and shall be a public record, and notice of decisions shall be mailed immediately after such filing to parties in interest, as designated in section seventeen, to the planning board and to every person present at the hearing who requests that notice be sent to him and states the address to which such notice is to be sent." (See St. 1971, c. 1018.) We do not know how many, if any, of the requirements of § 18 (other than filing with the town clerk) were complied with.

[4] The subsequent amendments to § 21 are not here material. See St. 1970, c. 80; St. 1972, c. 334.

the planning board. At a town meeting held in February or March of 1971 the town voted to change the zoning of the petitioner's land in such fashion as no longer to permit the use of that land for a multiple dwelling complex.[5] On May 13, 1971, the planning board wrote the board of appeals advising it that the petitioner's revised plan met the technical requirements of the amended decision of the board of appeals and had been approved by the planning board, and calling the attention of the board of appeals to the fact that the revised plan called for the construction of fifty-eight dwelling units rather than the sixty-nine units originally proposed.

At some following point in time the petitioner requested the board of appeals to issue him a special permit in accordance with the amended decision. By letter to the petitioner dated August 20, 1971, the board replied that it had been advised by town counsel to the effect that its original decision of November 3, 1970, was a final and appealable decision, that it had "lost all jurisdiction of the case" when it filed its original decision on November 17, 1970, and that the "purported amendment" of December 1, 1970, was of "no legal force or effect." The board suggested to the petitioner that he file a new application.

Instead, the petitioner filed the present petition for a writ of mandamus on November 19, 1971. The writ commanded the board "to determine if the revised plan of the petitioner contains the additional information required by the [b]oard's amended decision of December 1, 1970, . . . and . . . on the basis of such a determination, to issue a certificate either granting or denying the requested permit."[6]

We are of opinion that the board's original decision of November 3, 1970, must be construed as a final decision denying the petitioner's application for a special permit,

---

[5] See G. L. c. 40A, §§ 5, 5A, 7A, 11 and 12.

[6] We pass by the point that the writ leaves no room for the exercise of the board's discretion on the merits of the proposal portrayed on the revised plan. A resolution of that point is not necessary to our disposition of this case.

that the petitioner can derive no assistance from the amended decision of December 1, 1970, and that the petitioner is barred from seeking relief by mandamus because of his failure to pursue the exclusive remedy of judicial review accorded him by the provisions of G. L. c. 40A, § 21, as amended.

1. The public hearing was held and concluded on September 15, 1970, at which time the board took the case under advisement. There is nothing in the original decision (Appendix A) to suggest that the board intended to hold a further public hearing or to keep the proceedings open in any other manner in order to give the petitioner an opportunity to submit a plan which might or might not meet with the approval of the planning board. The board twice referred to its action as a "decision" and on three occasions employed a variation of the word "vote" in characterizing the action which it said it took. The filing of the decision with the town clerk was inconsistent with a notion that the decision was to have anything other than present effect as written.

We construe the original decision as a present and unqualified denial of the petitioner's application for a special permit. The board's feeling that "in order to preserve the purpose and intent of the [by-law], the recommendations of the [p]lanning [b]oard should be met" was intended both as an expression of the board's agreement with the recommendations of the planning board and as the statement of the board's "reasons" required by G. L. c. 40A, § 18 (see fn. 3 this opinion) for reaching the conclusion that "[r]elief may not be granted without substantial detriment to the public good" which was implemented by the tandem authorization and vote "to not grant" a permit.[7] Placed as they are in this context, the words "voted to disapprove the application until revised plans are submitted to the [p]lanning [b]oard and

---

[7] That the language employed to express the board's conclusion is that commonly employed by a board of appeals in denying a petition for a variance (see G. L. c. 40A, § 15[3]) strengthens our conclusion that the board intended to deny the application for a special permit in this case.

[p]lanning [b]oard recommendations and approval are obtained" are of significance only to the extent that they reflect an effort by the board to comply with the requirement of § V F1 of the by-law that "[i]f the application is disapproved, the reasons for disapproval shall be listed with appropriate recommendations for correction of deficiencies."

To say, as the petitioner almost suggests, that the language just quoted should be read as an expression of present intention to issue a permit subject to a limitation that the planning board approve a revised plan in the future, and without further consideration by the board of appeals, would lead us to either of two improper conclusions: namely, that the board of appeals intended an impermissible delegation of its authority to the planning board (see *Coolidge* v. *Planning Board of North Andover,* 337 Mass. 648); or that the board of appeals intended to make a decision "which partially commit[ted] it to the issuance of a permit" based on a plan or on other evidence not before it. *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 376, 379. Cf. *Shoppers' World, Inc.* v. *Beacon Terrace Realty, Inc.* 353 Mass. 63, 68, 69-71; *Zartarian* v. *Minkin,* 357 Mass. 14, 18-19. We cannot accept either conclusion.

2. We turn to the amended decision (Appendix B).

A board of appeals has inherent power to amend a decision by adopting and filing a statement of further reasons for its decision (*Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 550, 552-553) so long as no one entitled to notice of the original decision is prejudiced by a late filing of the amendment (*Shuman* v. *Board of Aldermen of Newton,* 361 Mass. 758, 763, 764-765, 767-768) and so long as the amendment is within the scope of the original petition and does not change the result of the original decision. *Fish* v. *Building Inspector of Falmouth,* 357 Mass. 774, 775.[8] The amendment in this case did "clarify" the

---

[8] We reject the petitioner's argument that the board's power of amendment in this case is derived from or supported by anything found in the first sentence of

original decision in the sense that the numbered paragraphs of the amendment specified the respects in which the board believed the petitioner's original plan was deficient in supplying the information required by § V F1 of the by-law and which the board was to consider in deciding whether to grant the petitioner's application. However, the amended decision cannot be given its intended effect.

(a). The vote "to approve the application providing the applicant submits a revised plan which complies with" certain requirements and the promise that the board "will issue a certificate granting a special permit . . . in accordance with said revised plan" are wholly inconsistent with the original "vote to not grant the [p]ermit." We conclude that the amendment must be construed as a reversal of the original denial of the application (point 1 of this opinion) and thus as a change in the result of the original decision which is of a type forbidden by *Fish* v. *Building Inspector of Falmouth,* 357 Mass. 774.[9]

(b). Having concluded that the second decision was ineffective as an amendment to the original decision, we must also conclude that it cannot stand on its own as an entirely new decision because of the board's failure further to comply with the notice and hearing requirements of G. L. c. 40A, §§ 4, 17 and 18, following the filing of the original decision. *Planning Board of Peabody* v. *Board of Appeals of Peabody,* 358 Mass. 81, 83.

(c). Prescinding from the foregoing difficulties, paragraphs 3 and 4 of the amended decision call for types of information which § V F1 of the by-law required be on the original plan and be considered by both the planning board and the board of appeals. The planning board's report of September 14, 1970, discloses that such information did

---

G. L. c. 40A, § 19. In our opinion that sentence is intended to apply to a case in which a board of appeals acts as an appellate tribunal in an appeal taken under c. 40A, §§ 13 and 15(1).

[9] Another substantial change appears in the respect that although the recommendations of the planning board were still to be "met," the amended decision no longer required the planning board to approve the revised plan.

not appear on the original plan. Paragraphs 3 and 4, as well as paragraphs 6 and 7, are peculiarly illustrative of sensitive areas in which the by-law required both boards to exercise independent judgment. By hypothesis, however, that judgment could not be brought to bear until such time as a revised plan should be submitted. For this reason we are forced to the conclusion that the amended decision was an invalid commitment by the board of appeals to issue a permit on the basis of a plan or other evidence not yet before it. See *Weld* v. *Board of Appeals of Gloucester,* 345 Mass. 376, 379.

3. Having failed to pursue the exclusive statutory course of review provided in G. L. c. 40A, § 21 (*Lincoln* v. *Board of Appeals of Framingham,* 346 Mass. 418, 420), with respect to the original decision of the board, the petitioner may not now seek relief by mandamus. *Codman* v. *Assessors of Westwood,* 309 Mass. 433, 438, and cases cited. Cf. *Brady* v. *Board of Appeals of Westport,* 348 Mass. 515, 517-522.

The writ of mandamus is quashed, and the judgment is reversed. Judgment is to be entered dismissing the petition.

*So ordered.*

# APPENDIX A.

## TOWN OF MANSFIELD
## ZONING BOARD OF APPEALS

IN RE:        Application of Fireside Realty Trust

### STATEMENT OF FACTS

The Board of Appeals for the Town of Mansfield conducted a public hearing on the petition of Fireside Realty Trust of 254 Main Street, Walpole, for the granting of a Permit under Section V, Paragraph "F" of the Zoning By-Law. The hearing was held on the 15th day of September, 1970, in the Town Hall, Mansfield, Massachusetts at 8:25 P.M. Present at the hearing were the following members:

> Harry S. Cook, *Chairman*
> Thomas A. Malay, *Clerk, Pro-tem*
> Antonio Caponigro, Jr.
> Fernand G. Bedard
> Willard Roots, appointed as a voting member
>     in the absence of Richard O. Driscoll

The petitioner filed his application on the 3rd day of August, 1970, with the Board of Appeals and requested a permit to construct a 69 unit multiple dwelling complex on a parcel of land located on the westerly side of Branch Street. The lot has a frontage of 648 feet with an area of 166,460 square feet in an Agricultural Zone. Due notice of this hearing was given by mail, postage prepaid, to all persons deemed to be affected thereby, as shown on the most recent tax list and also notice was given by publication in the Mansfield News, a newspaper published and circulated in said Mansfield, Massachusetts. An attested true copy of said notice was introduced as Exhibit "A". Also introduced were the following: Application to the Board as Exhibit "B"; Plans of the complex as Exhibit "C"; Planning Board recommendations as Exhibit "D". There was opposition recorded. At the conclusion of the hearing the Board took the case under advisement.

### DECISION

On the 3rd day of November, 1970, the Board of Appeals, with all the aforenamed members present, felt that in order to preserve the purpose and intent of the Zoning By-Law, the recommendations of the Planning Board should be met. Relief may not be granted without substantial detriment to the public good. Therefore: all members present and voting, it was voted to disapprove the application until revised plans are submitted to the Planning Board and Planning Board recommendations and approval are obtained.

The Building Inspector is hereby authorized to not grant a permit in accordance with this decision.

BOARD OF APPEALS OF THE
TOWN OF MANSFIELD

*By:* Harry S. Cook, *Chairman*

Record of vote:

I vote to not grant the Permit as above set forth

Harry S. Cook, *Chairman*
Thomas A. Malay, *Clerk, Pro-tem*
Willard K. Roots
Antonino Capognigro, Jr.
Fernand G. Bedard

Filed with the Town Clerk,
Mansfield, Massachusetts on: Nov. 17, 1970

APPENDIX B.

TOWN OF MANSFIELD
ZONING BOARD OF APPEALS

IN RE:       Amendment to Fireside Realty Trust Decision Filed with
             the Town Clerk November 17, 1970

At a regular meeting held December 1, 1970, the Board of Appeals reviewed the Decision of Fireside Realty Trust filed with the Town Clerk on November 17, 1970, and because of the fact that some of the wording of the decision did not clearly set forth the whole intent of the Board and in order to clarify and modify said decision, acted to amend it as follows:

Delete the two (2) paragraphs immediately following the word DECISION and substitute the following:

On the 3rd day of November, 1970, the Board of Appeals, with all the aforenamed members present, felt that in order to preserve the purpose and intent of the Zoning By-Law, certain recommendations of the Planning Board should be met. Therefore: all members present and voting, it was voted to approve the application providing the applicant submits a revised plan which complies with the following requirements:

(1)   Entrances to driveways are clearly shown.
(2)   Parking areas are adequately delineated.
(3)   Landscape features including lawns, planting areas, fences and walls are shown on the plan.
(4)   Drainage for the parking lots is shown on the plan.
(5)   The potential safety problem caused by the parking of vehicles along Branch Street is eliminated.
(6)   Methods of sewage disposal and refuse and waste disposal are adequately shown on the plan.
(7)   Proper access to the rear of the buildings for fire and other emergency vehicles is shown on the plan.
(8)   Existing fire hydrants on Branch Street are properly located on the plan.
(9)   The plan contains a note or is accompanied by an agreement that all electrical services within the project will conform to the specifications of the Mansfield Electric Light Department.
(10)  The building dimensions, shown on the plan, conform with the floor plan dimensions.

If a revised plan containing the above additional information, as determined by the Board of Appeals, is submitted to the Board of Appeals, on or before February 1, 1971, the Board of Appeals will issue a certificate granting the petitioner a special permit authorizing the construction of a multiple-dwelling complex in accordance with said revised plan, and authorizing the building inspector to grant permits in accordance with said certificate: but if no such revised plan is submitted

Potter *v.* Board of Appeals of Mansfield.

to the Board of Appeals on or before February 1, 1971, the Board of Appeals will issue a certificate denying the petitioner's application for a special permit.

BOARD OF APPEALS OF THE
TOWN OF MANSFIELD

Harry S. Cook, *Chairman*
Thomas A. Malay, *Clerk*
Fernand G. Bedard
Antonino Caponigro, Jr.
Willard K. Roots

Filed with the Town Clerk,
Mansfield, Massachusetts, on: January 4, 1971