## H. N. Gorin & Leeder Management Co. *vs.* Rent Control Board of Cambridge.

Middlesex.    April 5, 1984. — June 15, 1984.

Present: Grant, Cutter, & Brown, JJ.

*Practice, Civil,* Appeal to Superior Court. *Rent Control,* Recalculation of rent levels, Maximum rent base.

A regulation of the rent control board of Cambridge providing for a three-day limit on sending notices of error to the board did not bar the board from correcting computational errors on its own initiative after the expiration of the three-day period. [274-275]

In the circumstances, the rent control board of Cambridge did not exceed its authority in recalculating on its own initiative maximum rent levels some four months after their initial determination. [274-275]

Although a three dollar monthly rent increase approved by the rent control board of Cambridge on October 23, 1980, did not become collectible until December 1, 1980, the board could properly include this increase in calculating maximum rent levels in effect on November 5, 1980. [275-277]

Civil action commenced in the Third Eastern Middlesex Division of the District Court Department on January 27, 1982.

On appeal to the Superior Court Department, a motion to dismiss the appeal was heard by *Kaplan,* J., a Probate Court judge sitting under statutory authority. The case was heard by *Dimond,* J., on motions for summary judgment.

*Stuart T. Rossman* for the plaintiff.

*Patricia A. Cantor* for the defendant.

Brown, J. The plaintiff (Gorin & Leeder) appeals from a summary judgment entered by a judge of the Superior Court in favor of the defendant Rent Control Board of Cambridge (board). We find no merit in any of the plaintiff's contentions and affirm the judgment.

On October 23, 1980, pursuant to Cambridge Rent Control Regulation Series No. 76 (Regulation 76), the board granted a

capital improvement increase of three dollars per apartment per month and mailed a notice of rent adjustment to Gorin & Leeder and to the tenants of the premises. The increase became collectible as of December 1, 1980. On or about November 25, 1980, pursuant to Cambridge Rent Control Regulation Series Number 96 (Regulation 96), the board mailed a notice of maximum rent for a 1980 general adjustment to Gorin & Leeder and to the tenants notifying them that an eleven percent increase in the maximum rent level had been granted. Regulation 96 provided that owners of controlled rental accommodations in Cambridge could receive a general rent increase as an adjustment for 1980 real estate tax increases. The adjusted maximum rent level allowed depended upon the ratio between the 1980 real estate tax increase assessed against the property and the maximum rent level for the building in effect on November 5, 1980.

Within three days after receipt of the November 25 notice, Gorin & Leeder notified the board that it believed the allowable rent figures it had received were inaccurate in that the calculation of the total rent collectible as of January 1, 1981, failed to reflect the three-dollar increase for capital improvements. On December 24, 1980, the board mailed a corrected notice of maximum rent for the 1980 general adjustment to Gorin & Leeder and to the tenants, incorporating the three-dollar increase in each rent and confirming the eleven percent increase. Gorin & Leeder then notified the board that it believed that the figures were still inaccurate because the three-dollar increase for capital improvements had been improperly included in the calculation of the November, 1980, maximum rent base for purposes of determining the 1980 general adjustment.

On April 23, 1981, the board mailed a second corrected notice of maximum rent for the 1980 general adjustment to Gorin & Leeder and to the tenants indicating that the allowable rent increase at the premises had been corrected to nine percent. The board subsequently informed the tenants that the nine percent increase was effective for collection as of January 1, 1981, and that they could deduct from their future rent payments any amounts they had paid in excess of the nine percent increase.

1. *Denial of Plaintiff's Motion to Dismiss Appeal.*

Gorin & Leeder claims that the board's failure to pay a fifty dollar entry fee in a timely manner constituted a forfeiture of the board's right to appeal the decision of the District Court (where relief first was sought) to the Superior Court. We need say only that G. L. c. 231, § 97, controls the instant circumstances. See *Freedman* v. *Rent Control Admr. of Cambridge,* 1 Mass. App. Ct. 836 (1973). In a § 97 appeal, unlike cases removed to the Superior Court pursuant to G. L. c. 231, § 104, there is no requirement that a fee be paid prior to entry in the Superior Court. See G. L. c. 231, § 101. See also G. L. c. 231, § 102C.

2. *Validity of the April 23, 1981, Recalculation.*

The plaintiff argues that the issuance of the April 23, 1981, notice was invalid as matter of law because the board had no authority to recalculate unilaterally rent levels four months after their initial determination. The argument continues that Regulation 96, §§ 06 and 07, provide the only procedure by which the board may make changes in notices of adjusted maximum rent levels, and since the board did not follow those procedures, its actions are void. The plaintiff also argues that the board did not have the inherent authority to recalculate unilaterally the 1980 general adjustment because the action constituted a change in policy or interpretation of the rules after the decision already had been made and implemented.

Gorin & Leeder's initial contention, that the board's decision is prohibited by the regulation, lacks foundation in the text of the regulation. The three-day limit on sending notices of error to the board, as found in § 06(2) of Regulation 96, does not expressly or by implication bar the board from correcting errors on its own initiative. The answer to Gorin & Leeder's other contention is that "[d]ue process does not require that an agency must bind itself to an error in perpetuity irrespective of the public interest." *Vitale* v. *Planning Bd. of Newburyport,* 10 Mass. App. Ct. 483, 487 (1980). An agency has the "inherent power . . . to correct an inadvertent or clerical error in its decision so that the record reflects its true intention." *Hunting-*

*ton* v. *Zoning Bd. of Appeals of Hadley,* 12 Mass. App. Ct. 710, 714-715 n.4 (1981).[1]

The board is vested with the responsibility of administering controlled rental property. See St. 1976, c. 36, § 7(*a*). In carrying out this responsibility, it is only appropriate that some degree of flexibility be accorded to the board in light of the purposes behind c. 36 and the inevitable uncertainty and difficulties that the board is bound to encounter within the rent control field. See 2 Davis, Administrative Law § 18.09, at 608 (1958 ed.). Here, the board did not exceed the limits of that flexibility. The trial judge found that Gorin & Leeder's adjustment proceeding before the board was essentially ongoing. Although Gorin & Leeder had been collecting higher rents since January 1, 1981, it had pending before the board a request for correction of the 1980 general adjustment.[2]

3. *Present Maximum Rent Roll.*

The last contention raised by Gorin & Leeder is that it was error for the board to include the three-dollar increase allowed on October 23, 1980, for capital improvements within the present maximum lawful rent roll in calculating the 1980 general adjustment. The argument is that since the three-dollar increase was not actually collectible until December 1, 1980, after proper notice to the tenants, and the premises were classified on November 5, 1980, the three-dollar increase should not have been included as part of the rent base figure in calculating the applicable real estate tax increase and maximum rent

---

[1] This power is subject to certain restrictions, however. It has been held that an agency may correct its errors so long as the correction does not constitute a "reversal of a conscious decision" (*Cassani* v. *Planning Bd. of Hull,* 1 Mass. App. Ct. 451, 456 [1973]), does not grant relief different from that originally sought, and does not change the result of the original decision (see *Potter* v. *Board of Appeals of Mansfield,* 1 Mass. App. Ct. 89, 95 [1973]), and so long as no one relying on the original decision has been prejudiced by the correction (*Shuman* v. *Aldermen of Newton,* 361 Mass. 758, 765 [1972]). The board's decision did not fall into any of these prohibited categories.

[2] In passing, we note that when the board eventually sent its notice of April 23, 1981, it did not order an immediate refund of overcharges. It allowed time for the overcharges to be credited against future rentals.

ratio, pursuant to Regulation 96, §§ 01 and 03(a). As a result of the board's action, the ratio of real estate tax increase to maximum rent was reduced for the premises and the permissible rent increase was reduced from eleven percent to nine percent.

The board, however, interprets Regulation 96 as permitting it to include the three-dollar increase in the present maximum lawful rent roll on the day it was allowed, October 23, 1980.

While an administrative or executive interpretation cannot bind the courts, weight should be given to "any reasonable construction of a regulatory statute adopted by the agency charged with . . . [its] enforcement." *Brookline* v. *Medical Area Serv. Corp.,* 8 Mass. App. Ct. 243, 258 (1979). The agency's interpretation should be allowed to stand unless such an interpretation is "arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). In interpreting Regulation 96, § 06(1), the trial judge held that when the board notified Gorin & Leeder and the tenants of the adjusted maximum rent level on November 25, 1980, the three-dollar increase was already part of the "present maximum rent roll." This interpretation is a reasonable construction of Regulation 96. Indeed, c. 36, § 7(*a*), provides that the "board shall make such individual or general adjustments, either upward or downward, of the maximum rent . . . to assure that rents for controlled rental units are established at levels which yield to landlords a *fair net operating income* for such units" (emphasis supplied). Gorin & Leeder does not argue that the board's decision has denied it a fair net operating income. Moreover, Gorin & Leeder has conceded that for tenancies created on or after November 1, 1980, a tenant could be charged a rent which included the three-dollar increase approved on October 23, 1980.

In support of its contentions, Gorin & Leeder cites *Woods* v. *Callahan,* 172 F.2d 179 (1st Cir. 1948), and *Babson* v. *Boston Rent Control Admr.,* 371 Mass. 404 (1976). These cases, however, are of little assistance because they held that the lawful maximum rent included the full amount chargeable by the landlord under certain tax escalation clauses as of the

effective date of rent control regardless of whether the tenant was actually required to begin paying that full amount on that date. *Woods, supra* at 182; *Babson, supra* at 404-405.

There was no error in the board's actions.

*Judgment affirmed.*