GEORGE ROTHMAN, trustee,[1] *vs.* RENT CONTROL BOARD OF
CAMBRIDGE & another.[2]

No. 92-P-1207.

Middlesex. November 2, 1993. - August 26, 1994.

Present: JACOBS, GILLERMAN, & PORADA, JJ.

*Rent Control*, Eviction, Habitability. *Landlord and Tenant*, Eviction, Hab-
itability, Rent. *Regulation. Administrative Law*, Record.

Substantial evidence supported the determination of a rent control board
denying a landlord's application for a certificate of eviction where the
tenant established, as a defense, the existence of health code violations
in the residential unit. [219-220]

A tenant was entitled to an abatement of rent, pursuant to a provision in
the applicable rent control regulations regarding sanitary and building
code violations, for the entire period in which substandard conditions
were demonstrated to exist in the residential unit. [220-222]

A rent control board hearing examiner properly supplemented the record
of a proceeding before him with certain governmental inspectional ser-
vice documents where all parties were given notice and an opportunity
to participate and be heard on the issue, and where no claim was made
otherwise that the documents were not admissible. [222-224]

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 10, 1991.

The case was heard by *Catherine A. White*, J.

*Stuart J. Farkas* for the plaintiff.

*Patricia A. Cantor* for Rent Control Board of Cambridge.

JACOBS, J. George Rothman, as trustee (the landlord), ini-
tiated this proceeding pursuant to the Cambridge Rent Con-
trol Act, St. 1976, c. 36, § 9, by applying to the Cambridge
Rent Control Board (the board) for a certificate of eviction
of Shirley Attanasio (the tenant) for nonpayment of rent.
Upon the denial of his application, the landlord appealed to

[1]Of Stu-Lin Realty Trust.
[2]Shirley Attanasio, the tenant.

the Superior Court, which affirmed the board's denial. His appeal to this court is from that judgment of affirmance.

In denying the certificate of eviction, the board affirmed a hearing examiner's finding that the amount of abatement to which the tenant was entitled for substandard housing conditions exceeded the amount of the rent arrearage due the landlord. The landlord, proceeding under G. L. c. 30A, § 14(7),[3] claims that the board's decision was based on an error of law and was in excess of its statutory authority in so far as it adopted the hearing examiner's findings in which he calculated the nonpayment of rent based upon arrearages between May, 1989, and July, 1990, the time of the hearing, while computing the abatement for the period between January 21, 1986, the date the landlord had notice of ongoing State Sanitary Code violations, and the hearing date.[4] The landlord also argues that the board's decision was predicated upon erroneously admitted evidence and improper procedure and was not based on substantial evidence. We affirm.

The landlord acknowledges that the board's regulation 61-02[5] provides an absolute defense to an eviction in the event that violations, known to the landlord, are found, but he ar-

---

[3]Statute 1976, c. 36, § 10(*a*), as amended by St. 1985, c. 399, § 3, provides in pertinent part that "[j]udicial review of adjudicatory decisions shall be conducted in accordance with section fourteen of chapter thirty A of the General Laws." See *Amari* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. 598, 600 n.6 (1986).

[4]The hearing examiner found that the abatement due the tenant was $4,799 and that the rent arrearage was $3,237. The parties have noted in their briefs that the latter amount was stated incorrectly due to an arithmetic error and should be $3,990. We leave the appropriate correction to the board. See *H.N. Gorin & Leeder Mgmt. Co.* v. *Rent Control Bd. of Cambridge*, 18 Mass. App. Ct. 272, 274-275 (1984).

[5]Regulation 61-02 provides in pertinent part that, "where [an] Application for a Certificate of Eviction is filed . . . , if the tenant alleges a defense that there exists on the premises one (1) or more code violations . . . and the Board shall find:

> "(a) The premises, during the time in question, were or are in violation of the Standards of Fitness for human habitation established under the State Sanitary Code, the State Building Code or any other Ordinance, By-Law, Rule, or Regulation establishing such Standards, and that such conditions may endanger the health, safety, or well-being of a person occupying the premises; and

gues that the use of the words "the time in question" in that regulation limits the abating conditions to the period during which the rental arrearages are claimed by the landlord. The landlord further contends that the board acted outside its jurisdiction — that it effectively created a counterclaim by interpreting regulation 61-03[6] independently of regulation 61-02 and conducting a fair value analysis[7] for a period outside that of the claimed arrearages. He maintains that "the inescapable result" of the board's interpretation is that the tenant could "withhold rent in futuro without risking the threat of eviction even if the premises were in perfect condition."

Without here reviewing the evidence, we conclude that the hearing examiner's finding of State Sanitary Code violations in the tenant's residential unit known to the landlord before

---

"(b) The landlord knew of such condition prior to the tenant being in arrears in rent; and

"(c) Such condition was not caused by the tenant or any person acting under his control; and

"(d) The tenant has not denied the landlord reasonable access to the premises for the purpose of making the necessary repairs; and

"(e) The landlord has failed to make reasonable efforts to repair such conditions.

"Then the landlord's application shall be denied."

[6]Regulation 61-03 provides:

"(a) Pursuant to Regulation 61-02, if the Board shall find the landlord has made reasonable efforts to repair such condition, then the Board shall order the tenant to pay to the landlord such rent as the Board shall determine is the fair value of the premises during the time such condition existed.

"(b) The fair value of the premises shall be determined pursuant to Regulation 61-04.

"(c) If the tenant fails to make payment as ordered, then a Certificate of Eviction shall be issued by the Board . . . ."

[7]*McKenna* v. *Begin*, 5 Mass. App. Ct. 304, 310-311 (1977), relying on *Boston Hous. Authy.* v. *Hemingway*, 363 Mass. 184 (1973), established "a percentage reduction of use" method for computing damages for breach of the implied warranty of habitability. Regulations 61-03 and 61-04 utilize this approach, denominating it a determination of "the fair value of the premises during the time [the substandard] condition existed." The landlord questions only the period to which the fair value analysis is applied, not the method itself.

and during the period of rent withholding[8] and his determination that the landlord was not denied reasonable access to the premises are substantially supported by the hearing testimony and exhibits. That conclusion, coupled with our decision, discussed below, that improper hearing procedure has not been shown, ordinarily would end our analysis with an indication that the certificate of eviction properly was denied. However, since the issues extending beyond the propriety of the denial of the certificate of eviction are relevant to the amount of rent due from the tenant and potentially implicate the rights of other landlords and tenants, we discuss the landlord's argument that the board exceeded its authority by computing part of the abatement to which the tenant is entitled on the basis of the period preceding that during which rent was withheld. See *Altschuler* v. *Boston Rent Bd.*, 12 Mass. App. Ct. 452, 460 (1981).

1. *The abatement period.* The enabling statute, in effect, requires that a landlord seeking to evict a tenant for nonpayment of rent first apply to the board for a certificate of eviction which is to issue only upon proof that "the tenant has failed to pay the rent to which the landlord is entitled." St. 1976, c. 36, § 9(*a*)(1) and (*b*). Regulation 61-02 (see note 5, *supra*) requires that the landlord's application be denied in the face of a tenant defense based upon health code violations if the board makes certain findings, including that the premises were in violation of such codes "during the time in question."

The landlord does not contest, and in his brief implicitly concedes, the right of the board to condition rent entitlement on habitability. See *Flynn* v. *Cambridge,* 383 Mass. 152 (1981); *Altschuler* v. *Boston Rent Bd.*, 12 Mass. App. Ct. 452. Instead, he advocates a narrow reading of the term "during the time in question" to limit abatements based

---

[8]Among the violations found by the hearing examiner were (a) water leakage into the rear bedroom, (b) an unsafe rear porch, (c) a collapsed kitchen ceiling, (d) the front and rear common area entry doors did not lock properly, (e) and the unit door police lock had been removed and not replaced.

upon code violations to the period during which rent was un-paid.[9] This reading not only fails to accord to the board's interpretation of its own regulations the substantial deference to which it is entitled, absent arbitrary or unreasonable con-struction, see *H. N. Gorin & Leeder Mgmt. Co.* v. *Rent Con-trol Bd. of Cambridge*, 18 Mass. App. Ct. 272, 276 (1984), but it also disregards other provisions in the regulatory scheme. Regulation 61-03 requires the board to order the tenant to pay rent determined on a fair value basis "during the time such condition existed" if it finds that "the landlord has made reasonable efforts to repair such condition." The previous relevant reference to "such condition" appears in regulation 61-02(b), which predicates the denial of a certifi-cate of eviction on a landlord's knowing "of such condition *prior* to the tenant being in arrears in rent" (emphasis sup-plied). This regulation presumes the existence of the offend-ing condition during a period preceding the rental nonpay-ment. Moreover, our reading is consonant with the general principle that a tenant is entitled to a rental abatement from the time when a landlord first learns of substandard condi-tions. See *McKenna* v. *Begin*, 5 Mass. App. Ct. 304, 306 (1977). Certainly a tenant is not to be denied the full amount of such abatement by reason of her having paid rent to which the landlord may not have been entitled during part of the period in which substandard conditions existed. That the determination of an abatement entitlement might result in a tenant receiving a credit against future rental obligations to the landlord does not offend any accepted concept of fair-ness or the policy objective of the rent control statute of reg-

---

[9]The landlord in his brief claims that the case presents a "novel issue" of the application of a statute of limitations to regulation 61-03. Although the board at one point concerned itself with the proper statute of limita-tions and approved the determination of the hearing examiner, adopting the opinion of the board's general counsel, that the statute of limitations applicable to a tenant's abatement claims is six years, the landlord argues only that the board exceeded its authority by crediting the tenant with abatements for a period preceding the time of rental nonpayment. He does not argue that the board's action otherwise is limited by an applicable stat-ute of limitations. We, therefore, intimate no opinion as to the time beyond which abatements may not be claimed.

ulating and controlling eviction of tenants. See St. 1976, c. 36, § 1.

2. *The hearing examiner's conduct.* The hearing examiner noted in his report that during the course of the proceedings he had ruled that the record would remain open for a period of one week following the hearing "to allow the submission of certain documents by the representatives of the landlord and the tenant." Although he determined that documents submitted by the tenant within a week following the close of the hearing were unrelated to the purpose for which the record had been left open, he nevertheless concluded they were relevant and included them in his report as exhibits. After review of the evidence, the hearing examiner also determined that "[b]ecause documents submitted by the landlord and tenant[] were not sufficient to make comprehensive and conclusive findings regarding the abatement claims . . . a careful examination of the Inspectional Services file for the property was necessary." (The inspectional services department is an agency of the city of Cambridge.) As a result of his independent review, he included eight of that agency's documents in the record as exhibits. In a letter dated approximately ten weeks after the hearing and two months before he filed his report, the hearing examiner notified the landlord and tenant of his posthearing activities, specifically identifying the documents added to the record and afforded the parties "a period of ten days . . . to submit documentation or argument in rebuttal, or alternately, to request a further hearing." The landlord objected to this procedure but did not submit further documentation or argument or seek a further hearing.

On review of the record we detect no error or evidence of bias in the hearing examiner's actions and decision. After a one-day hearing in which documentary evidence comprising, as here, approximately twenty-eight exhibits, some with multiple parts, and covering the history of a contentious tenant-landlord relationship over a four and one half year period, it is not surprising that a hearing examiner, upon review, should conclude there may be missing elements in the evidence. Faced with the regulatory imperative that "[t]here

shall be a full and fair open proceeding to determine whether . . . a certificate of eviction [shall be] issued" (under the board's regulation 35-01), it was not an abuse of discretion for the hearing examiner to provide a complete and comprehensive record. Analogous regulatory systems promote hearing officer amplification of the record in the interests of completeness and fairness. See 801 Code Mass. Regs. § 1.02(10)(g)(5)(1993)[10]; 20 C.F.R. § 404.944 (1993).[11] The dictates of fairness were well preserved by the hearing examiner's offer, after supplementing the record, to receive further documentation, argument, or requests for a further hearing. He did not rely on secret evidence. There was no violation of the general principle that "[w]hatever actually plays a part in the decision should be known to the parties and subject to being controverted." Schwartz, Administrative Law § 7.13, at 369 (2d ed. 1984). To the extent the hearing examiner's activities constituted outside consultation, he acted within the spirit of the board's regulation 36-04,[12] which permits such consultation outside the hearing provided the parties are given an opportunity to participate. Here, the hearing examiner issued a clear invitation to participate. Cf. *New York Central R.R.* v. *Department of Pub. Works*, 354 Mass. 332, 336 (1968). *Norway Cafe, Inc.* v. *Alcoholic Bevs. Control Commn.*, 7 Mass. App. Ct. 37 (1979).

The executive director of the board subsequently reviewed the hearing examiner's actions and determined that there was no violation of its regulations applicable to the hearing

---

[10]This section provides in pertinent part that a hearing officer shall have the "specific dut[y]" to "introduce into the record any regulations, statutes, memoranda, or other materials he believes relevant to the issues at the hearing."

[11]Title 20 C.F.R. § 404.944 provides in pertinent part: "The administrative law judge may stop the hearing temporarily and continue it at a later date if he or she believes that there is material evidence missing at the hearing. The administrative law judge may also reopen the hearing at any time before he or she mails a notice of the decision in order to receive new and material evidence."

[12]The regulation provides: "The presiding officer may not consult anyone concerning a fact in issue without giving notice and opportunity for all parties to participate."

examiner or the conduct of the hearing. The board, by its decision, implicitly confirmed that opinion, and again we accord considerable deference to that determination. We note that the landlord does not otherwise contest the admissibility, substantiality, or validity of the additional documentation. See *Palmer* v. *Rent Control Bd. of Brookline*, 7 Mass. App. Ct. 110, 118 (1979).

*Judgment affirmed.*