DENNIS M. DOWD *vs.* BOARD OF APPEALS OF DOVER
(and a companion case[1]).

Norfolk.    March 9, 1976. — February 24, 1977.

Present: HALE, C.J., GOODMAN, & ARMSTRONG, JJ.

*Zoning,* Special permit, Nursery, Board of appeals: decision.    *Words,* "Farm," "Nursery."

A town's zoning by-law permitting farms and gardens as of right in certain zoning districts while requiring a special permit for nurseries was valid. [150-152]

---

[1] Town of Dover *vs.* Dennis M. Dowd & another.

Dowd *v.* Board of Appeals of Dover.

Where specific findings by the judge in a zoning appeal permitted the zoning board's determination that granting a special permit would adversely affect traffic, it was the board's determination rather than the judge's finding to the contrary that was controlling. [152-156]
In denying a special permit for a nursery a zoning board of appeals improperly considered the applicant's past violation of the zoning by-law. [156-157]

BILL IN EQUITY filed in the Superior Court on March 29, 1974.

CIVIL ACTION commenced in the Superior Court on September 20, 1974.

The cases were heard by *Morse, J.*

*Reginald H. Howe* (*A. Franklin Burgess, Jr.*, with him) for the Board of Appeals of Dover & another.

*Daniel H. Kelleher* (*Alphonse W. Query, Jr.*, with him) for Dennis M. Dowd & another.

GOODMAN, J.   These are separate appeals by the board of appeals of Dover (board) and by the town of Dover (town), respectively, in two cases tried together in the Superior Court. The trial judge made findings and rulings in each case and entered separate judgments. The evidence is reported.

Both cases concern, primarily, the construction and application of the provisions of Section II of the zoning by-law of the town of Dover, entitled "RESIDENCE DISTRICT USES" and characterized in the first sentence as follows: "The 'R' — Residence District is intended for single-family homes with not more than one dwelling and customary accessory uses upon one lot." Among the uses expressly permitted as of right is "5. Farm and Garden." A special permit (G. L. c. 40A, § 4)[2] is required for use as "9.... (c) Greenhouse or nursery." One of the cases is an appeal under G. L. c. 40A, § 21, brought by Dowd on March 29, 1974, from the decision of the board denying him a special permit for the operation of a nursery on about fourteen acres of land (locus) which he owns and

---

[2] The statutory references in this opinion are to the provisions of The Zoning Enabling Act as in effect prior to St. 1975, c. 808, § 3.

which is in a residential district. The locus is part of a twenty-two acre parcel situated on the northeasterly side of Springdale Avenue in Dover; the remaining acreage is in a conservancy district and is not involved in this case. The judgment from which the board appeals annulled the board's decision.

Subsequent to the commencement of that action, the town, on September 20, 1974, brought an action against Dowd under G. L. c. 40A, § 22 (the enforcement case), to enjoin him and Dowd's Nurseries, Inc., subsequently added as a party, from operating a nursery on the locus and (by amendment) on other premises at 22 Main Street which were owned or controlled by Dowd. The amended complaint also asked for other relief not here material. The town appeals from a judgment giving only partial relief. We discuss these cases in the order discussed in the briefs of the parties.

1. *The enforcement case by the town.* The trial judge found that Dowd and Dowd's Nurseries, Inc., of which Dowd is the sole stockholder, are engaged "in two related endeavors which are at issue herein, first, a nursery and, secondly, a landscape contracting business. The nursery stock is situated at [the locus] . . .," where "[t]he defendants have for several months grown and stored ornamental trees and shrubs . . .. On occasion nursery stock has been bought from other nurseries and stored there overnight. . . . A farm tractor and garden tractor have been used on this property in connection with the nursery." The judge further found that Dowd maintained an office in a barn on the premises at 22 Main Street, at which his residence is located. From this office he conducted a wholesale landscaping business which "requires the transport of nursery stock to various job sites in southern New Hampshire, Massachusetts and Rhode Island. Most of these jobs are for institutional customers. On occasion customers have come to Springdale Avenue [the locus] to select stock."

The judge ruled that the landscape contracting business was not a permitted use; but he also ruled that there was no "rational basis for the distinction made in the Dover

zoning by-law between farms and gardens which are a permitted use in a residential district and nurseries which require a special permit." Accordingly, he enjoined Dowd and Dowd's Nurseries, Inc., the defendants, only "from using any part of premises at 22 Main St. or 79 Springdale Ave. Dover for or in connection with a landscape contracting business." The town contends that it is entitled to an injunction prohibiting the defendants from using either of those premises as a nursery. The defendants ask that the judgment be affirmed; they do not press their cross appeals and raise no issue as to the restraints otherwise contained in the judgment. Thus, the only issue in the enforcement case is whether the town could legally exclude nurseries (except by special permit) from a provision permitting farms as of right. We think the distinction in this by-law is valid.

It may well be, as the defendants argue, that in some contexts the word "farm" is broad enough to include a nursery. *Needham* v. *Winslow Nurseries, Inc.* 330 Mass. 95, 100 (1953). Cf. also *Piekos* v. *Bachand,* 333 Mass. 211, 212-213 (1955). See Anderson, American Law of Zoning § 15.43 (2d ed. 1976). But we are not here concerned with any question of interpreting the word "farm." The exclusion in the by-law of nurseries as a use permitted as of right is clear. Our task is to determine whether the defendants have been able to demonstrate that this distinction between a "farm," permitted as of right, and a "nursery," requiring a special permit, "cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it ...." *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138 (1949). *Commonwealth* v. *Henry's Drywall Co. Inc.* 366 Mass. 539, 541 (1974).

There is little evidence of the character of the farming that has been conducted in the town, but the evidence that there is only one "working farm" in Dover (and the board's statement in its supplementary decision that "[t]here are no working farms adjacent to or nearby the locus") suggests that such farming as has generally been conducted in Dover may not be incompatible with devel-

opment as a residential area. On the other hand, a nursery might have been thought by the town to be a commercial operation sufficiently different in kind from farming to justify difference in treatment. In Anderson, American Law of Zoning, § 15.43, p. 669 (2d ed. 1976), it is pointed out that a number of jurisdictions have made a judgment of this kind in their zoning ordinances; it is noted that there is a "type of ordinance [which] treats greenhouses and nurseries as commercial uses, confining them to commercial districts, or permitting them in residential districts subject to the issuance of a special permit" (footnotes omitted).

Nurseries have also been viewed as commercial operations in other contexts. In *Miethke* v. *Pierce County*, 173 Wash. 381, 388-389 (1933), cited in the *Winslow Nurseries* case, the court held that nursery stock could be "assessed as merchandise the same as the stocks of merchants which are assessed annually.... The Legislature had the undoubted right and power to define nursery stocks as merchandise and to exempt growing crops on cultivated lands." See *Amarillo* v. *Love*, 356 S.W.2d 325, 328 (Texas Civ. App. 1962); *Jackson & Perkins Co.* v. *Stanislaus County Bd. of Supervisors*, 168 Cal. App. 2d 559, 563 (1959), citing *Story* v. *Christin*, 14 Cal. 2d 592, 595-596 (1939). Where purely zoning considerations are involved the town has a wide latitude in differentiating between uses. See *Dobbs* v. *Board of Appeals of Northampton*, 339 Mass. 684, 688 (1959). The defendants have not sustained the heavy burden of showing that these two different activities must be treated in exactly the same way.

2. *Dowd's appeal under G. L. c. 40A, § 21.* Dowd's appeal from the decision of the board denying his application for a special permit to operate a nursery required the Superior Court judge to examine the board's decision and, upon a hearing de novo, to determine whether Dowd had demonstrated that the decision was based "on a legally untenable ground or [was] unreasonable, whimsical, capricious or arbitrary." *S. Volpe & Co. Inc.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 359 (1976),

and cases cited. After a hearing and taking a view, the judge made findings and ordered the board to amplify its decision by stating (among other things) "(1) in detail and specifically the reasons for which the permit was denied ...." This was well within the judge's discretion. *Roberts-Haverhill Associates* v. *City Council of Haverhill,* 2 Mass. App. Ct. 715, 718-719 (1974). See *M. DeMatteo Constr. Co.* v. *Board of Appeals of Hingham,* 3 Mass. App. Ct. 446, 451 (1975). The judge found indications in the board's decision that its reasons for denying the special permit might have been based on objections, many of which were inapposite, set out in a petition by residents who lived some distance from the locus. The judge was also concerned "to what extent the previous irritant of the Dowd operation of a nursery at 22 Main Street was injected into the proceedings of the Board of Appeals and constituted a basis for the Board's decision."[3]

The board filed a supplementary decision; the judge then filed supplementary findings, rulings, and an order for judgment and annulled the decision of the board.

The judge found in his original findings and order: "Any uses Dowd has made or might make on the central portion[4] of the property, were a special permit granted, would be completely screened from sight from abutting land by reason of the growth of trees which surround the central portion of the locus and the slope on the northwest side. The only clue the neighbors might have that a nursery operation was being conducted on the property would be any inference that could be drawn from the vehicles entering or leaving from the driveway where it joins

---

[3] From the evidence it appears that in 1972 and 1973 Dowd had used the premises of his residence at 22 Main Street, zoned as residential, to keep and sell ornamental trees and shrubs. As a result of complaints it was agreed between the selectmen and Dowd that he would, over a period, remove all external evidence of the nursery. This had been substantially accomplished by January, 1974, after which there were no complaints.

[4] The plan for the proposed nursery submitted by Dowd to the board indicated that the central portion would be utilized initially. The plan also indicated an area of possible expansion in the future.

Springdale Avenue." With reference to the vehicles, the court went on to find "that the coming and going of all these vehicles would create no traffic problems or hazards, nor would they be a source of reasonable annoyance to the immediate neighborhood."

The judge's findings as to the seclusion of the central portion of the locus is not disputed in the board's brief; it is amply supported by the testimony and presumably by the view taken by the judge. The board does, however, take issue with the judge's finding that no traffic problem would be created. It argues, and we agree, that the more specific findings of the judge[5] permit a contrary assessment and that in such a case the board's assessment is controlling. *Copley* v. *Board of Appeals of Canton,* 1 Mass. App. Ct. 821 (1973). See *Gulf Oil Corp.* v. *Board of Appeals of Framingham,* 355 Mass. 275, 277-278 (1969). Nor is such an assessment by the board precluded by the fact that Springdale Avenue, which would be affected by the traffic, is undeveloped; the board could, within reasonable limits, consider the future effect of the requested exceptions. *Gulf Oil Corp.* v. *Board of Appeals of Framingham, supra. Humble Oil & Ref. Co.* v. *Board of Appeals of Amherst,* 360 Mass. 604, 606 (1971). The trial judge found (in his supplementary findings) that "there is no evidence that it [the land across Springdale Avenue which would be affected by such traffic] is likely to be so developed in the forseeable future...." But the burden was on Dowd

---

[5] The trial judge found "[t]he required employees for the operation, if it were permitted, would be a fulltime secretary and foreman and 7 or 8 part-time laborers to help during the spring and summer. Three trucks are presently used in the operation, along with a farm tractor and garden tractor. In the operation of the nursery, these trucks are used to bring trees, shrubs and related materials to the nursery site as well as to transport them and workmen to the various job sites. Owners abutting the locus would be aware of the coming and going of these trucks. When not in use, these vehicles would be stored on the locus. When the laborers came and left the locus, whatever means of transportation they used would be apparent to neighbors along Springdale Avenue. In addition, were Dowd and his secretary allowed to use the locus for the office of the corporation, their vehicles would have to enter and leave the premises."

to produce evidence that the development of the area was so speculative or remote that its consideration by the board as a factor in its decision would be unreasonable. We cannot say that Dowd has sustained that burden. Contrast *Mahoney* v. *Board of Appeals of Winchester*, 344 Mass. 598 (1962).

However, it does not appear from the board's supplementary decision that the traffic problem was considered "a significant source of annoyance" apart from the other activities,[6] which the judge properly found to be completely hidden; the denial of the special permit appears to be based on the totality of the various considerations. Contrast *S. Volpe & Co. Inc.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 361 (1976), and cases cited. Indeed, the board appears to have been concerned largely with the effect on present homeowners who are located to the north, particularly in Cranberry Lane; it is clear, however, that they would not be affected by vehicles moving from the driveway of the locus onto Springdale Avenue, which was relatively undeveloped.

Further, the board in its supplementary decision "recognize[d] that it might be possible to conduct a limited nursery use in the central portion of the locus without substantial inconvenience or annoyance to the presently existing houses in the area" but feared any expansion of the use. This fear of expansion is, as the board indicates in its brief, predicated on Dowd's "past record" of violation of the zoning by-law. The position of the board in its supplementary decision is that "Mr. Dowd's apparent previous disregard of the zoning by-law in connection with

---

[6] The board's supplementary decision states: "The Board finds and concludes that the traffic and noise generated by the proposed use, including not only that of the trucks, employee vehicles and admitted occasional customer vehicles but also that of the other activities of the proposed nursery such as the use of tractors or other machinery and the delivery and exterior storage of materials etc., would create a significant source of annoyance to present residents in the area, and an even greater source of annoyance to any houses that might in the future be constructed in the area, especially in the open fields diagonally across Springdale Avenue from the locus." See fn. 5.

the same use when it was being conducted — illegally — at his home at 22 Main Street" was sufficient justification to refuse to consider the possibility of conditions which might confine the operation to the proposed use.

We agree with the judge that the board's position is legally untenable; it injects criteria not found in the enabling act, G. L. c. 40A, §§ 2-4, or in the by-law. See *S. Volpe & Co. Inc.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. at 361, and cases cited. The criteria in the act and by-law relate to the land, not, as the board's brief argues, "the character and reputation of the applicant." See *Mosey Cafe, Inc.* v. *Licensing Bd. for Boston*, 338 Mass. 199, 204 (1958). The board points to nothing in the by-law, the enabling act, or the cases which supports its contention. *Shuman* v. *Board of Aldermen of Newton*, 361 Mass. 758, 766-767 (1972), cited by the board, holds merely that the grant of a special permit may be limited to a particular "applicant." But the considerations on which the grant is based still relate to the land rather than the applicant.

An analogous distinction is found in the criteria for the grant of a variance. It may be granted where substantial hardship "to an appellant" would be involved. But the substantial hardship cannot be personal; it must be one "especially affecting such ... parcel." G. L. c. 40A, § 15. *Abbott* v. *Appleton Nursing Home, Inc.* 355 Mass. 217, 221 (1969). *Planning Bd. of Barnstable* v. *Board of Appeals of Barnstable*, 358 Mass. 824 (1971). We also find significance in *Building Inspector of Falmouth* v. *Haddad*, 369 Mass. 452 (1976), where, in spite of construction which appears to have been made in knowing violation of a zoning by-law, a landowner was given an opportunity to apply for a special permit if necessary to save the construction from an order of demolition. See *Stow* v. *Pugsley*, 349 Mass. 329, 335 (1965).

The consideration of conditions is contemplated by The Zoning Enabling Act and the by-law. General Laws c. 40A, § 4, provides that "[t]he board of appeals ... may, in appropriate cases and subject to appropriate conditions and safeguards, grant to an applicant a special permit ...";

Section XI(3) of the by-law provides that the board of appeals "shall prescribe appropriate conditions and safeguards in each case." Dowd's application for a special permit, though it did not refer to conditions in so many words, outlined an operation and various safeguards which lent themselves to translation into conditions (a prudent course if a board is concerned that the use remain unchanged). Consideration of safeguards cannot be foreclosed by the board's supposition that the applicant is not to be trusted to comply with conditions which might suggest themselves from the proposal and from the give and take normally incident to the consideration of a special permit. To the extent that an enforcement problem may be created, an adequate remedy has been provided by The Zoning Enabling Act. General Laws c. 40A, § 22. See *Commonwealth v. Sostilio,* 351 Mass. 419 (1966); and, as the trial judge indicated, the by-law itself lodges enforcement powers in the board of selectmen (Section XI of the by-law). "In considering the application the scope of the board's concern was confined to whether petitioners had established entitlement thereto under the standards fixed by the local legislature. When it grounded its consideration upon [plaintiff's] prior violations of the zoning ordinance it exceeded its legitimate authority . . .." *Wyss* v. *Zoning Bd. of Review of Warwick,* 99 R.I. 562, 563-564 (1965). Accord, *Bartz* v. *Board of Adjustment,* 80 Wash. 2d 209, 221 (1972); *Hofstra College* v. *Board of Appeals of Old Westbury,* 24 Misc. 2d 248, 260 (Sup. Ct.), app. dism. 12 App. Div. 2d 631 (N.Y. 1960). *Donadio* v. *Cunningham,* 58 N.J. 309, 326 (1971).[7] Anderson, American Law of Zoning, § 15.24 (1968).

---

[7] The board's contention that Dowd's operations at 79 Springdale Avenue, without a special permit, disentitled him to relief was not raised before the trial judge, and he made no findings directed to this issue. The matter of those operations was raised in connection with the board's complaint that Dowd had violated a preliminary injunction issued by another judge in the enforcement case. The town does not appear to have pressed contempt charges. In any event, the record in this case does not support a defense based on the clean hands doctrine. *New York, N.H. & H. R.R.* v. *Pierce Coach Lines, Inc.* 281 Mass. 479,

Accordingly, paragraph I of the judgment in the enforcement case is to be modified so as to enjoin the defendants from operating a nursery at 22 Main Street or 79 Springdale Avenue, detailed provisions (if found necessary) to be settled in the Superior Court; that judgment, as so modified, is affirmed. The judgment in the appeal under G. L. c. 40A, § 21, is affirmed. Further proceedings before the board shall be in accordance with this opinion. Costs of appeal are not to be taxed to any party.

.    *So ordered.*

482-483 (1933). *Deutschmann* v. *Board of Appeals of Canton,* 325 Mass. 297, 299-300 (1950). *Mackey* v. *Rootes Motors, Inc.* 348 Mass. 464, 467 (1965). *Murphy* v. *McKenzie,* 1 Mass. App. Ct. 553, 558-559 (1973).

We do not consider Dowd's separate application for a special permit under Section II(9)(c) of the by-law since the board did not reach the merits of that application, having denied Dowd's basic application for the operation of a nursery.