CATHARINE HUNTINGTON vs. ZONING BOARD OF
APPEALS OF HADLEY & another.[1]

Hampshire.  September 18, 1981. — December 4, 1981.

Present: GREANEY, PERRETTA, & SMITH, JJ.

Zoning, Variance, Conditions, Board of appeals.

In the circumstances, a zoning board of appeals did not exceed its au-
thority in removing a condition imposed on a variance previously
granted which purported to restrict the variance to the "lifetime" of
the owner of the property and to prohibit the variance from being
"transferred to anyone else." [715-721]

CIVIL ACTION commenced in the Superior Court on April
7, 1976.

The case was heard by *Murphy*, J.

*Bradford R. Martin, Jr.* (*William E. Dwyer* with him) for
the plaintiff.

*Leonard C. Jekanowski*, Town Counsel, for Zoning
Board of Appeals of Hadley.

GREANEY, J.   The plaintiff, Catharine Huntington,
brought this action in the Superior Court to review a deci-
sion of the Hadley zoning board of appeals (board).  That
decision granted the petition of Joseph F. Wanczyk (defend-
ant) for the removal of a condition imposed on a variance
previously granted to him which restricted the duration and
transferability of the variance.  The Superior Court af-
firmed the decision of the board.  We affirm the judgment
of the court.

The defendant owns twelve acres of land in Hadley. Since
1958, the defendant has used a portion of this land adjacent
to Route 47 for the operation of a business which manufac-

[1] Joseph F. Wanczyk, Jr.

tures and sells precast concrete products. In 1961, the town adopted a zoning by-law which prohibited manufacturing in the district where the land is located. Following the adoption of the by-law, however, the defendant was allowed to continue his manufacturing operation as a nonconforming use. See G. L. c. 40A, § 5, as in effect prior to St. 1975, c. 808, § 3. See now G. L. c. 40A, § 6.

Over the next twelve years, the defendant expanded his business substantially, constructing a new building and outfitting it with specialized heavy equipment at a total investment of approximately $170,000. In 1973, the defendant became concerned that the expansion of the business exceeded that permitted for a nonconforming use, and petitioned the board for a variance.

On May 18, 1973, the board granted the defendant a variance allowing the expanded use subject, however, to seven specific conditions enumerated in its decision. The condition in issue here (number 6) restricted the variance to Wanczyk's "lifetime" and it prohibited the variance from being "transferred to anyone else." The 1973 decision was not appealed, and all parties to this action concede the present validity of the variance and the validity of that condition at the time it was imposed.[2]

In 1976, the defendant petitioned the board to remove condition number 6. Since Hadley had not then adopted G. L. c. 40A, as appearing in St. 1975, c. 808, § 3 (hereinafter present c. 40A), as permitted by St. 1977, c. 829, § 4, amending St. 1975, c. 808, § 7, the decision on this petition was governed by the provisions of G. L. c. 40A, as in effect prior to St. 1975, c. 808, § 3 (hereinafter former c. 40A). See *Casasanta* v. *Zoning Bd. of Appeals of Milford*, 377 Mass. 67, 71-73 & nn. 10, 11 (1979); *Shalbey* v. *Board of Appeal of Norwood*, 6 Mass. App. Ct. 521, 524-527 (1978).

---

[2] Wanczyk does not argue that the board lacked power to impose the condition under former G. L. c. 40A, § 15, as amended through St. 1958, c. 381.

After notice, which the trial court held "proper," including notice to abutters, the board held a public hearing on the defendant's petition.  See former G. L. c. 40A, §§ 17-18 (now §§ 10-11).  The board also viewed the defendant's property and found that the defendant had erected fences, as required by one of the conditions imposed on the 1973 variance, to prevent the manufacturing operation from being visible to abutters or to the public.  Based on its view, the board made a general finding that the defendant was, in the words of the trial court, "in substantial compliance with all the conditions imposed" by the 1973 decision.

On March 15, 1976, the board granted the defendant's petition to remove condition number 6.  In support of its action, the board stated that the termination of the variance on the defendant's death would cause substantial hardship because it would render his specialized manufacturing equipment useless, or virtually so, thus causing his investment to be lost to his estate.  The decision also stated that even if a subsequent board were willing to grant a new variance for this use, the suspension of operations at the defendant's death would inevitably cause a period of uncertainty and lost income for the defendant's family, and that such needless hardship should be foreseen and avoided.  The board concluded that "the continuation of all [the] other restrictions provides assurance that there will be no substantial detriment to the public good and that the intent and purpose of the by-law will continue to be met."

The plaintiff, Huntington, is the owner of land abutting the south side of the defendant's property.  Located on her land is a building known as the Huntington House, which is an historic structure visited by tourists.  The plaintiff, who lives in Boston, opposed the 1973 petition for the variance by means of a letter to the board, which was read at the public hearing.  The grounds of her opposition do not appear in the record, nor does it appear whether she stated any opposition to the 1976 petition.  It does appear, however, that the board's primary ground of concern in both proceedings was the visibility of the defendant's operation

to visitors to the Huntington House and to the public traveling on Route 47.

Following the board's decision on the 1976 petition, the plaintiff brought this action against the defendant and the board, alleging that the board exceeded its authority in removing the condition because the requirements for a new variance had not been met. See former G. L. c. 40A, § 15 (see now § 10). She did not testify at the hearing in the Superior Court. The trial court found for the defendants, holding that each of the three statutory prerequisites had been met. The court also noted, however, that "as a practical matter" the 1976 decision did not really amount to a grant of a new variance, but rather involved a "modification of an existing variance which had been in effect for . . . [nearly] three years."

The plaintiff rejects the suggestion that the board's action constituted merely a "modification" of the original variance, arguing that the board could properly have removed the condition only upon satisfaction of the requirements for a new variance contained in former G. L. c. 40A, § 15. The plaintiff argues further that it was the defendant's burden to make such a showing, *Warren* v. *Board of Appeals of Amherst*, 383 Mass. 1, 10 (1981), and cases cited, and that the board and the court both erred in ruling that the statutory requirements had been met here, see *Raia* v. *Board of Appeals of No. Reading*, 4 Mass. App. Ct. 318, 321 (1976).

In our view, it is unnecessary to consider whether the removal of the condition required the same showing necessary for the grant of a new variance.[3] Nor is it necessary to

---

[3] The plaintiff is correct that if the board's action were deemed to require such a showing, it could not be sustained here. First, the board failed to make one of the "specific findings necessary" to justify the granting of a variance under former § 15. *Wolfson* v. *Sun Oil Co.*, 357 Mass. 87, 89 (1970). See *McNeely* v. *Board of Appeal of Boston*, 358 Mass. 94, 103 (1970). Cf. present G. L. c. 40A, § 10. Although the board determined that the condition constituted a "hardship" to the defendant, it failed to find any facts which demonstrate that such hardship derived from circumstances "especially affecting" the land or buildings, as re-

hold that a local zoning board possesses a broad general power to modify substantive conditions attached to an existing variance.[4]   Rather, we think that the board's power to

---

quired by former § 15, as amended through St. 1958, c. 381. The absence of such factual findings would leave the board's decision "invalid on its face." *Warren* v. *Board of Appeals of Amherst, supra* at 10. Likewise, the trial court's failure to find such facts would render its holding of special hardship "a bare recital of the statutory conditions" which is insufficient to support the granting of a variance. *Id.*, quoting from *McNeely* v. *Board of Appeal of Boston, supra.*

Second, unique hardship could not properly be found on the facts presented here. See, e.g., *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 680 (1953); *Warren* v. *Board of Appeals of Amherst, supra* at 11; *Raia* v. *Board of Appeals of No. Reading,* 4 Mass. App. Ct. at 321-322; *Planning Bd. of Watertown* v. *Board of Appeals of Watertown,* 5 Mass. App. Ct. 833 (1977). Contrast *Dion* v. *Board of Appeals of Waltham,* 344 Mass. 547, 551-552 (1962); *Sherman* v. *Board of Appeals of Worcester,* 354 Mass. 133, 135-136 (1968). The hardship in this case does not arise out of any circumstance "especially affecting" the land or buildings, as construed in the decisions above, but rather arises out of circumstances which are "personal" to the defendant. *Barnhart* v. *Board of Appeals of Scituate,* 343 Mass. 455, 458 (1962). *Abbott* v. *Appleton Nursing Home, Inc.,* 355 Mass. 217, 221 (1969).

[4] The former § 15 is silent with respect to the modification of a variance. Although the former § 19 contained a reference to the board's power to "modify any order or decision," this court has expressed the opinion that such language was "intended to apply to a case in which a board of appeals acts as an appellate tribunal in an appeal taken under [former] G. L. c. 40A, §§ 13 and 15(1)." *Potter* v. *Board of Appeals of Mansfield,* 1 Mass. App. Ct. 89, 95 n.8 (1973). Cf. *Smith* v. *Building Commr. of Brookline,* 367 Mass. 765, 772-774 (1975).

Most of the cases relevant to the question of the board's power of modification involve special permits rather than variances. Two propositions are established. First, it is clear that a board has "inherent power . . . to correct an inadvertent or clerical error in its decision so that the record reflects its true intention." *Selectmen of Stockbridge* v. *Monument Inn, Inc.,* 8 Mass. App. Ct. 158, 164 (1979). *Dion* v. *Board of Appeals of Waltham,* 344 Mass. at 553. *Burwick* v. *Zoning Bd. of Appeals of Worcester,* 1 Mass. App. Ct. 739, 742 (1974). See also *Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 324-325 (1964). Second, the board may not make a substantive amendment which changes the result of an original deliberate decision, or which grants relief different from that originally granted, without compliance with the relevant notice and hearing requirements. That is not the case here. See *Fish* v. *Building Inspector of Falmouth,* 357 Mass. 774, 775 (1970); *Potter* v. *Board of Appeals of Mansfield,* 1 Mass. App. Ct. at 95-97. See also *Cas-*

remove the condition here is most appropriately analyzed in terms of the nature and effect of the condition itself and in light of the statutory concerns relevant to the grant of a variance.

We look first to the statute. Under the former § 15, the critical factual showing required for a variance was that of unique hardship, i.e., "substantial hardship" which was created by "conditions especially affecting *such parcel or such building* but not affecting generally the zoning district in which it is located" (emphasis supplied). The exception made available by this statute was a narrow one. At its root is a concern that the grant of a variance be based only upon circumstances which directly affect the real estate and not upon circumstances which cause personal hardship to the owner. "The criteria in the act . . . relate to the land, not . . . [to] the applicant." *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 156 (1977) (special permit case). The decisions cited previously (see note 3, *supra*) have made this differentiation quite clear by consistently overturning grants of variances predicated only on a showing of personal hardship. The present § 10 continues this emphasis on the land itself and makes the concept even more restrictive by specifying that the special circumstances justifying the grant of a variance must relate to "the soil conditions, shape, or topography" of such land or structures.

In contrast, the condition in issue here bears no relation to any circumstance which affects the underlying real estate. Nor is it aimed at the nature, character, or extent of the use

sani v. *Planning Bd. of Hull*, 1 Mass. App. Ct. 451, 456 (1973); *Vitale* v. *Planning Bd. of Newburyport*, 10 Mass. App. Ct. 483, 487 (1980).

For other authorities dealing with the question whether a board possesses an inherent power to make substantive modifications of prior decisions, see 6 Rohan, Zoning and Land Use Controls § 43.03(3), at 43-44 (1981); 3 Anderson, American Law of Zoning § 18.65, at 313 (2d ed. 1977). See also *Cohen* v. *Fair Lawn*, 85 N.J. Super. 234, 237 (1964); *Springsteel* v. *West Orange*, 149 N.J. Super. 107, 112-113 (1977); Note, Indiana Variance Proceedings and the Application of Res Judicata, 46 Ind. L.J. 286, 291 (1971).

permitted of the estate.[5]  Rather, it serves only to limit the
duration of the variance itself by tying it to the lifetime and
ownership of a particular individual.  We view this as in-
consistent with the explicit statutory emphasis on the real
estate and its use as the basis of the board's inquiry.  In ef-
fect, such a condition "injects criteria not found in the
enabling act." *Dowd* v. *Board of Appeals of Dover*, 5 Mass.
App. Ct. at 156.  We further view it as inconsistent with the
generally accepted principle that "a variance applies to the
land rather than to its current owner, and . . . runs with the
land when it is conveyed to [another] person." 3 Anderson,
American Law of Zoning § 18.64, at 311 & cases cited at
n.24 (2d ed. 1977).  See 3 Rathkopf, Zoning and Planning
§ 38.06[1], at 38-61, and cases cited at nn. 2, 4 and § 40.02,
at 40-2 — 40-3, and cases cited at n.2 (4th ed. 1981);
6 Rohan, Zoning and Land Use Controls § 43.02[1], and
cases cited at n.15 (1981); 5 Williams, American Land Plan-
ning Law:  Land Use and the Police Power § 133.02 (1975).
See also *Dowd* v. *Board of Appeals of Dover, supra.* Cf.
*Colonial Acres, Inc.* v. *North Reading*, 3 Mass. App. Ct.
384, 385 (1975).

Personal conditions of the sort presented here are held in
disfavor in other jurisdictions.  See *Fox* v. *Shriver-Allison
Co.*, 28 Ohio App. 2d 175, 181-182 (1971); 3 Anderson,
American Law of Zoning § 18.69, at 323-324; Strine, The
Use of Conditions in Land Use Control, 67 Dick. L. Rev.
109, 133 (1963); Note, Zoning Amendments and Variances
Subject to Conditions, 12 Syracuse L. Rev. 230, 237 (1960).
See also *Dexter* v. *Town Bd. of Gates*, 36 N.Y. 2d 102, 105-
106 (1975).  As aptly expressed by Chief Justice Kenison in

---

[5] Since the original grant of the variance was never appealed, we are
bound to presume that the board properly found each of the specific
criteria required by the former § 15, including the element of hardship
arising from "conditions especially affecting [the] parcel . . . but not af-
fecting generally the zoning district in which it is located," and that the
use allowed by the variance itself is valid.  See *LaCharite* v. *Board of Ap-
peals of Lawrence*, 327 Mass. 417, 421 (1951); *Ploski* v. *Zoning Bd. of Ap-
peals of Somerset*, 7 Mass. App. Ct. 874, 875 (1979).

*Vlahos Realty Co.* v. *Little Boar's Head Dist.*, 101 N.H. 460, 463-464 (1958), such restrictions are inappropriate because they "place the emphasis on the regulation of the person rather than the land, and tend to make [a variance] an ad hominem privilege rather than a decision regulating the use of property." In the only Massachusetts case which has addressed the question, the court was inclined to the view that such a condition may be invalid when imposed on a variance. See *Todd* v. *Board of Appeals of Yarmouth*, 337 Mass. 162, 169 (1958).[6]

The Legislature has recently made a clear policy judgment rejecting the attachment of such a condition to the grant of a variance. The present § 10, as appearing in St. 1975, c. 808, § 3, contains new language which specifically prohibits the imposition of "any condition, safeguards or limitation based upon the continued ownership of the land or structures to which the variance pertains by the applicant, petitioner or any owner." While this section also includes general language retained from the former § 15, which allowed the board to impose "limitations both of time and of use," it is not clear to us that this language was ever intended to sanction a condition of the sort presented

---

[6] In the *Todd* case, which dealt with the validity of a special permit, the court upheld a condition which provided that the permit "runs only to the applicant." However, in addressing the argument that this condition was "invalid because primarily related to ownership of property, rather than its use," the court suggested in dictum that this "contention may have more force in respect of a variance under [former] § 15, cl. 3, than of a permit under [former] § 15, cl. 2. See *Olevson* v. *Zoning Bd. of Review of Narragansett*, 71 R.I. 303 [,307-308 (1945)]; *Soho Park & Land Co.* v. *Board of Adjustment of Belleville*, 6 Misc. (N.J.) 686 [(1928)]." *Id.*

We note that such conditions have continued to be upheld with respect to special permits. See *Maki* v. *Yarmouth*, 340 Mass. 207, 212-213 (1960); *Shuman* v. *Board of Aldermen of Newton*, 361 Mass. 758, 766-767 & n.11 (1972). It has also been noted, however, that the *Shuman* case, *supra*, "holds merely that the grant of a special permit may be limited to a particular 'applicant.' But the considerations on which the grant is based still relate to the land rather than the applicant. An analogous distinction is found in the criteria for the grant of a variance." *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. at 156.

here, and the available evidence tends to indicate that it was not. The legislative history of the present G. L. c. 40A, for example, states that the quoted prohibition was inserted in § 10 for the purpose of eliminating "the practice of some local boards of appeals to condition the grant of a variance on the continued ownership of property by a particular person," which practice was deemed "improper, considering that hardship must be unique to the land or building and not merely to an individual." 1973 House Doc. No. 6200, at 20. See 1972 House Doc. No. 5009, at 66.

Despite the parties' assumption that condition no. 6 was valid under the former § 15 when imposed, two conclusions now become apparent: (1) the validity of a condition tying the duration of a variance to ownership by a particular person was questionable even under the former statute, in light of the statute's emphatic focus on the land and its use, and in light of the general disfavor in which such conditions are held; and (2) this condition could not now be imposed under the present § 10, because of that statute's express judgment that such conditions are to be prohibited.

To these conclusions we add the evidence at the hearing in the Superior Court which suggests that the board's decision to impose the condition rested on factors unrelated to the land's use or the operative criteria in § 15. That evidence shows that the board's concerns in 1973 about the visibility of the business had been substantially satisfied in 1976 by the defendant's erection of fences in compliance with one of the conditions imposed,[7] and that the defendant had substantially complied with the other conditions of the

---

[7] That condition required that such fences be six feet high, "of solid construction such that one cannot see through them," and that they be placed along the south side of the defendant's work area (facing the Huntington House) as well as the north side (facing another abutter). It appears that the view from Route 47 on the east was already substantially blocked by the defendant's work building. We therefore infer that the erection of these fences left the operation visible only from the river on the west side of the property, as to which the defendant was required to construct a fence "of any material."

variance, all of which the board continued in effect.[8] More-over, there was testimony by the chairman of the board that condition no. 6 was originally imposed as an additional safe-guard to ensure that the manufacturing use would not be continued unless the defendant brought a new petition to remove it, which would necessitate a new public hearing at which the defendant's compliance with the other restric-tions would be scrutinized. This testimony suggests that the condition was not intended to be appurtenant to the land, and that the board, in fact, contemplated future relief from its effect if the other restrictions, which did bear directly on the land, were satisfied.

In view of the evidence and for the reasons stated, it makes little sense in this case to force the owner and the board on to the horns of a dilemma. On the one hand, the owner should not be compelled to undertake the virtually impossible burden of proving the § 15 criteria for a new variance before he can obtain redress. On the other hand, the board should not be forced, if it is inclined to give relief, to bend the theory underlying a variance in the search for a proper solution. We hold that the condition was essentially a personal one which the board could subsequently delete in the exercise of its sound "administrative discretion" (see *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 558-559 [1954]; cf. *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 115-116 [1981]), and we turn to the question whether the board's exercise of its dis-cretion was justified.

In the exercise of its discretion, the board could properly take into account the change effected with respect to such

---

[8] These restrictions limited the nature of the manufacturing processes allowed, limited the operation to a prescribed work area, and provided that an existing barn may be used only for storage. They also prohibited the defendant from constructing any new buildings or subdividing the land. The defendant's 1976 petition sought to remove the latter restric-tion as well as the durational condition, but the board denied that re-quest. These restrictions are plainly proper since they were limitations which directly affected the use and therefore ran with the land.

conditions by the present § 10, and the fact that the other conditions, which ran with the land to bind subsequent owners, would continue to regulate the scope of the use. The board could properly consider the defendant's testimony that if the condition were not removed, the business would be lost as a livelihood to his family and the specialized equipment would have to be sold at auction "for 10% of its value," and his further unrebutted testimony that, although the work building might be used for another purpose, the property is unsuitable for farming or for building lots and that the loss of income caused by the operation of the condition might require his family to sell the land following his death.

As to the plaintiff's interest, it may be that she chose not to appeal the original grant of the variance because she felt she could endure a use limited to the defendant's lifetime or his ownership of the property. Although the existence of such an expectation would not preclude the board from removing the condition, it would, if demonstrated, be entitled to consideration. See and contrast *Day* v. *Zoning Bd. of Review of Cranston*, 92 R.I. 136, 139-140 (1961) (quashing decision of board which removed a condition, on ground that abutters had withdrawn objections to the original grant of the variance in reliance on such restriction). Cf. *Shuman* v. *Aldermen of Newton*, 361 Mass. 758, 764 (1972). See generally Note, Indiana Variance Proceedings and the Application of Res Judicata, 46 Ind. L.J. 286, 289-290 (1971). Here, however, it has not been shown that the board failed to consider any legitimate expectations which the plaintiff might have harbored, or that it accorded her interest little or no weight. Beyond that point, the record does not specify the grounds of the plaintiff's opposition to the 1973 petition, and the plaintiff did not appear before the board or the court in 1976 to express her reliance on the condition, or to articulate what harm she might incur from its removal.

Finally, the board found, on the evidence before it, that the use as restricted by the remaining conditions could con-

tinue beyond Wanczyk's ownership of the land without any "substantial detriment to the public good." See former § 15 (now § 10). That finding, added to the other considerations previously discussed, indicates that removal of the condition is in conformity with the goal that the zoning law be applied to further, not hinder, the stabilization of land use. See *Kane* v. *Board of Appeals of Medford,* 273 Mass. 97, 104 (1930); *Yaro* v. *Board of Appeals of Newburyport,* 10 Mass. App. Ct. 587, 589-590 (1980). We conclude that the board's decision to delete the condition was proper.

*Judgment affirmed.*