33 Mass. App. Ct. 398 (1992)
600 N.E.2d 187
BARRY L. SOLAR & another[1]
vs.
ZONING BOARD OF APPEALS OF LINCOLN.
No. 90-P-907.
Appeals Court of Massachusetts, Middlesex.
November 19, 1991.
October 9, 1992.
Present: PERRETTA, JACOBS, & GREENBERG, JJ.
Thomas B. Arnold for the defendant.
Chester A. Janiak for the plaintiffs.
PERRETTA, J.
On the plaintiffs' appeal under G.L.c. 40A, § 17, a Superior Court judge concluded that the defendant board was without authority to modify an accessory apartment permit to make it conditional upon the plaintiffs' ownership of the land. The permit had been granted fifteen years earlier for automatically renewable three-year periods without such a restriction. Concluding that the board's decision to make the permit personal to the plaintiffs was based upon a legally untenable ground, we affirm the judgment annulling the board's decision.
*399 1. The facts. In 1972, Lincoln adopted § VII-C of its zoning by-law to permit accessory apartment units or structures in districts zoned for single-family residences. The stated purpose of the by-law was to encourage the construction of such units so that affordable housing, constructed in compliance with Lincoln planning standards and policies, would be available to town employees.
The plaintiffs' house sits on a three-acre lot in a district zoned for single-family residences. There is a brick accessory structure situated about 100 feet from the house. In 1973, the plaintiffs applied for an accessory apartment permit. The structure had two bedrooms, a loft, a kitchen, bathroom, and its own heating and sewage disposal systems. Based upon those factors set out in § VII-C of the by-law,[2] the board granted the plaintiffs a permit. As originally granted, the permit reads: "The permit shall continue for a period of three years ... and shall be automatically renewable for successive three-year periods thereafter if written request for such extension is made to this Board ... and no written objection is submitted to this Board."
When the plaintiffs applied for their fifth successive renewal in 1988, there was no objection before the board. The board granted the permit but imposed the restriction in dispute: "The permit herein granted is personal to the owner and expires upon sale of the property."
2. The board's decision. In placing the personal condition on the permit, the board was carrying out a new policy which it had adopted on April 16, 1986. We learn from the minutes *400 of that board meeting, as well as from the board's decision on the plaintiffs' renewal application, that the board voted to implement a "sunset provision" to terminate all accessory apartment permits upon the sale of the property. The purpose of the new policy was to give the board "an opportunity to meet with new owners, to review the circumstances of the apartment, and to emphasize the purpose for these special permits."[3]
"New owners of property which have had special permits for an apartment would not be required to be recertified" by the planning board or the board of health, see note 2, supra, unless they "contemplated" making changes to the apartment. In that event, recertification was to be made a condition of the permit. By the unanimous vote of the board, the policy was also made applicable to renewal permits.
In its decision on the plaintiffs' renewal application, the board took the position that the condition imposed upon renewal did no more than make "explicit what was previously implicit, namely, that these permits are `personal' in nature." The board also took the view that in granting the permit in 1973, the right to amend or revoke it, pursuant to G.L.c. 40A, § 11, at three-year intervals was "explicitly reserved."
3. Discussion. Conditions of the type here in issue are not prohibited by G.L.c. 40A, § 9.[4] See Maki v. Yarmouth, 340 Mass. 207, 212-213 (1960); Shuman v. Aldermen of *401 Newton, 361 Mass. 758, 766-767 & n. 11 (1972); Hopengarten v. Board of Appeals of Lincoln, 17 Mass. App. Ct. 1006, 1007 (1984). This line of cases does not, however, address the question framed by the board on appeal: whether G.L.c. 40A, §§ 9 and 11, authorize the imposition of such a restriction as a modification of a permit upon an application for its renewal.
We do not think it necessary to our decision that we define whatever limits there may be to a board's power to modify a permit. See Vitale v. Planning Bd. of Newburyport, 10 Mass. App. Ct. 483, 487 (1980) (unquestionable power to correct errors); Huntington v. Zoning Bd. of Appeals of Hadley, 12 Mass. App. Ct. 710, 714-715 n. 4 (1981) (some discussion of the scope of authority to make substantive modifications). Although the board may be of the view that it simply modified the permit in granting the plaintiffs' renewal application, we conclude that the record before us shows that the board refused to renew the permit in accordance with its original terms.
In 1973, the plaintiffs were granted a permit which expressly recited that, upon request, it would be renewed automatically at three-year intervals in the absence of written objections filed with the board. Contrast John Donnelly & Sons v. Outdoor Advertising Bd., 361 Mass. 746, 756 (1972). There was no objection before the board in 1988, when the plaintiffs sought the fifth successive renewal of the permit. Even assuming that the board itself could be viewed as having lodged an objection, the plain implication of the permit as originally issued was that any objection would be related to those factors considered in granting the permit, as described in note 2, supra. See Hopengarten v. Zoning Bd. of Appeals of Lincoln, 17 Mass. App. Ct. at 1006 n. 1, 1007 (condition 8).
As made clear in both the minutes of its 1986 meeting as well as in its decision on the plaintiffs' renewal application, the board injected into its decision criteria not found in the by-law. The stated purpose of the board's new policy, to meet all new owners of accessory apartments, shows that the "sunset *402 provision" is unrelated to the land. See Dowd v. Board of Appeals of Dover, 5 Mass. App. Ct. 148, 156-157 (1977), holding that an applicant's past history of zoning violations did not justify the denial of a permit. Compare Hopengarten v. Zoning Bd. of Appeals of Lincoln, 17 Mass. App. Ct. at 1007, where renewal of a permit for a radio tower structure was held to be properly based upon considerations relating to the continuing safety of the public. The absence of any relationship between the personal condition and the land is made even more apparent by the board's policy of not requiring new owners to seek certification from the planning board and the board of health unless they intend to make changes to the accessory apartment.
Further, the board's policy cannot be justified on the basis of concerns about enforcement problems in respect to new owners who succeed to an accessory apartment permit between renewal periods. Although the materials before us do not disclose whether the zoning by-law itself gives the board any enforcement powers, The Zoning Act does. See G.L.c. 40A, § 7.
A board's decision will be upheld as long as it is "neither based on a legally untenable ground, nor is unreasonable, whimsical, capricious or arbitrary," S. Kemble Fischer Realty Trust v. Board of Appeals of Concord, 9 Mass. App. Ct. 477, 481 (1980). See also SCIT, Inc. v. Planning Bd. of Braintree, 19 Mass. App. Ct. 101, 105 n. 11 (1984), and cases therein collected. When the board refused to grant the plaintiffs' renewal application in accordance with the original terms of the permit, it acted solely on the basis of its new, 1986, policy. As that policy was not based upon factors concerned with the land or the protection of the surrounding community, the decision was based upon legally untenable grounds.[5] See Dowd v. Board of Appeals of Dover, 5 Mass. *403 App. Ct. at 156-157. See also 6 Rohan, Zoning and Land Use Controls § 44.04 (1990).
Judgment affirmed.
NOTES
[1] Judith M. Solar.
[2] The by-law requires that the owner of the property reside in either the principal residence or the accessory apartment, that there be adequate provision for sewage, waste, and drainage disposal, that the apartment have sufficient means of ingress and egress, that the construction and use of the apartment will not be detrimental to the neighborhood or injurious to persons or property, that the apartment be on a lot having at least 40,000 square feet, that the building in which any accessory apartment is to be constructed has to have been in existence on June 7, 1972, and that the number of permits granted by the board shall not exceed ten percent of the total number of single-family residences. The planning board and the board of health must report and certify in writing as to the applicant's compliance with these provisions.
[3] A proposal that accessory apartment permits be granted only for "(1) close relatives, (2) elderly, (3) definite moderate income and only for the tenure of the particular tenant was discussed" at this meeting in 1986. Because the proposal would require a zoning by-law change, the board "commend[ed]" it to the planning board and the housing commission for "study and comment." The materials before us do not reveal whether the by-law was changed consistent with the proposal, and the board makes no argument based upon any amendment of the by-law.
[4] General Laws c. 40A, § 10, as appearing in St. 1975, c. 808, § 3, specifically prohibits the grant of a variance conditioned "upon the continued ownership of the land or structures to which the variance pertains by the applicant, petitioner or any owner." This language is not found in § 9, also as so appearing, which provides that special permits "may also impose conditions, safeguards and limitations on time or use."
[5] As discussed, our decision is based upon the conclusion that the board in fact denied the plaintiffs' application by refusing to renew it in accordance with its original terms. We have not considered and, therefore, do not suggest or intimate any view as to the board's authority to make its 1986 policy applicable to a new accessory apartment permit.