MADLYN A. FAFARD vs. CONSERVATION COMMISSION OF
READING.

No. 92-P-1176.

Middlesex. September 9, 1996. - November 7, 1996.

Present: BROWN, KASS, & LAURENCE, JJ.

*Municipal Corporations,* Conservation commission, By-laws and ordinances.
*Zoning,* By-law, Wetlands. *Practice, Civil,* Action in nature of certiorari.

Where a conservation commission grounded its decision denying a land-
owner permission to build a proposed house on criteria for which there
was no basis in the municipal by-laws or the commission's regulations,
the commission's decision was arbitrary: the matter was remanded to
the commission for the issuance of an order of conditions authorizing
construction consonant with the commission's order of conditions, is-
sued previously under G. L. c. 131, § 40, permitting construction on the
same locus. [569-572]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 31, 1991.

The case was heard by *Thomas E. Connolly,* J.

*Stephen D. Anderson* for the plaintiff.

*H. Theodore Cohen,* Town Counsel, for the defendant.

KASS, J. Although the proposed construction did not
encroach on wetland or a protective twenty-five foot "zone of
natural vegetation" along the boundary of the wetland, the
conservation commission of Reading (commission), on the
ground that the construction itself or the use of the resulting
house would infallibly cause degradation of the protective
zone, declined to issue an order of conditions authorizing the
proposed construction. The commission's order was based on
a town by-law, rather than on G. L. c. 131, § 40. On review
in the nature of certiorari (G. L. c. 249, § 4), a judge in the
Superior Court concluded that the commission's decision was
lawful. We think that the commission acted arbitrarily and
reverse the judgment.

Madlyn Fafard, the plaintiff, owns lot 35, a 27,000 square foot, U-shaped parcel with frontage on Azalea Circle in Reading. See the sketch appended to this opinion. She filed a notice of intent with the commission on February 1, 1991, for the construction of a single-family house, garage, and driveway located as shown on the sketch. That submission was made conformably with G. L. c. 131, § 40, the State Wetlands Protection Act, and § 5.7 of Reading's general by-law (relating to wetlands). Although the work to be done was not within an area defined as wetland, it nevertheless fell under the jurisdiction of the commission because the proposed activity was within 100 feet of an area subject to protection under G. L. c. 131, § 40. See 310 Code Mass. Regs. § 10.02(1) and (2) (1989). That 100-foot strip the regulation refers to as "the Buffer Zone." There is a parallel provision in § 5.7.5 of the Reading by-laws that sets a buffer zone that includes "land extending [100] feet horizontally outward from the boundary of any area subject to protection under this [b]ylaw except land subject to flooding."

During the course of extended submissions to the commission and hearings before it, the property owner gradually backed the project into the configuration appearing on the appended sketch, agreed to a limited work line, a protective fence, and imposition by deed of a restriction on the locus that there be no activity in the zone of natural vegetation. Acting under G. L. c. 131, § 40, the commission by an order of conditions dated May 29, 1991, permitted the proposed construction. "No activity is proposed in any resource area," the commission found, and went on to say:

> "It is the determination of the [c]ommission that the proposed work can be adequately conditioned to protect the interests of the Wetlands Protection Act, c. 131, s. 40 *and the Reading General Bylaws, Section 5.7*" (emphasis supplied).

Twenty-one conditions followed.

That done, the commission doffed its State hat, replaced it with its local hat, and came to a quite different conclusion. Now operating under the town by-law, the commission had several things to say:

1. "The [c]ommission must consider the practical ability

to build exactly as shown on the plan, without any field variation, as well as recognizing the limits of accuracy imposed on the plan by scale. The [c]ommission must conclude that construction itself will encroach upon the buffer zone.

2. "The [c]ommission must also consider that the Fafard Companies [sic] performance on the adjacent filing for Greenhouse Acres . . . was found to be in violation of the [o]rders on more than one occasion . . . .

3. "The unusual 'flagpole' configuration of this lot commits a great amount of the upland lot area to access along over 200 feet of driveway.

4. "The [c]ommission must consider the practical result of house construction as proposed, and subsequent occupant activities. It is clearly evident that access to the perimeter of the house and to the yard area will result as a part of occupancy. This activity will be in direct violation of the provisions providing for a protective buffer zone. The [c]ommission concludes that the activity or encroachment will occur as a direct result of locating a house at the closest theoretical limit of the buffer zone during construction and occupancy.

5. "The project as proposed will cause degradation of the buffer zone in violation of the interests of the wetlands protection regulations."

So stating, the commission issued an order denying permission to build the proposed house under any condition.

1. *Standard of review.* When considering a case in the nature of certiorari, the standard of review may vary according to the nature of the action for which review is sought. *Forsyth Sch. for Dental Hygienists* v. *Board of Registration in Dentistry*, 404 Mass. 211, 217 (1989). *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. 124, 128 (1994). Our cases often speak of testing whether the governmental agency's action was arbitrary and capricious,

*ibid.*, which in a context such as this is saying no more than that the reviewing court examines the agency action to determine whether it was authorized by the governing statute — here the Reading by-law — in light of the facts. If the agency has acted for reasons that are extraneous to the prescriptions of the regulatory scheme, but are related, rather, to an ad hoc agenda, then that agency has acted arbitrarily because the basis for action is not uniform, and, it follows, is not predictable. Compare *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. 7, 18 (1979), where the question was not the criteria to be applied but whether, within announced criteria, the determination that there would be injury to the land in question was supported by substantial evidence.

2. *The Reading by-law.* It is common ground that the town, under its by-law, could set wetland protection standards that were more demanding than those of the State scheme. *Lovequist* v. *Conservation Commn. of Dennis*, 379 Mass. at 15. *De-Grace* v. *Conservation Commn. of Harwich*, 31 Mass. App. Ct. 132, 135-136 (1991). *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover*, 36 Mass. App. Ct. at 125-126. By itself, the commission's approval of the Fafard project for the locus under State law, but its disapproval under municipal law, introduces no legal dissonance and violates no principle of State preemption.[1]

Section 5.7.3 of the by-laws tailors to the geography of Reading (that town does not, for example, have coastal wetland) the opening paragraph of G. L. c. 131, § 40. The town by-law provides:

> "No person shall remove, fill, dredge or alter any bank, fresh water wetland, flat, marsh, meadow, bog, swamp, or lands bordering any creek, river, stream, pond or lake or any land under said waters or any land subject to flooding . . . without filing written notice of his intention to so remove, fill, dredge or alter and without receiving and complying with an [o]rder of [c]onditions . . . ."

Section 5.7.5. provides that "alter" shall mean "to impact by

---

[1] Indeed, the Department of Environmental Protection reviewed the Fafard project and found it to be conformable with State wetlands protection standards.

any activity, any area subject to protection under this bylaw." The areas "subject to protection" are those listed in § 5.7.3 quoted above. Under § 5.7.8, the commission

> "is empowered to deny permission for any activity that is likely to remove, dredge, fill or alter *subject lands* within the Town." (emphasis supplied).

In addition to these by-laws, the commission adopted a regulation captioned "Buffer Zone Protection" which provides:

> "Bordering any wetland, the [c]ommission may require a zone of natural vegetation of sufficient width to assure that silt, soil, fertilizer in solution, organic chemicals, herbicides, organic manures, oils or petroleum products which may be carried by surface runoff, shall not reach the wetland, but instead will be trapped by the natural mulch, soil and roots. Under most conditions, a zone width of 25 feet would be considered sufficient to accomplish this purpose."

3. *Whether commission acted arbitrarily within scope of its by-laws and regulations.* Some synthesis of the by-laws and regulations set out is in order. As to the locus and the plaintiff's project, they require that the project not alter the wetland and, although the regulation does not say so expressly, that the zone of natural vegetation be left alone so that it may perform its filtration function.

In the administration of controls limiting the use of land — as with any exercise of the police power — uniformity of standards and enforcement are of the essence. If the laws are not applied equally they do not protect equally. See the discussions in *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101, 106-111 (1984), and *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. 305, 312 (1990). Indeed, the commission's own regulations announce as a principal purpose "to create a uniformity of process." The commission's absolute denial fails that standard of uniform application of the pertinent municipal laws and regulations.

As previously noted, the commission had found that the project involved no activity in any resource area and that the work could be conditioned to protect the interests of the

subject land, the wetland. But, the commission says, the zone of natural vegetation will infallibly be affected by what the property owner does outside the zone of natural vegetation. That is a remarkable basis for action on several grounds. *First,* the commission does not descend to any particulars as to why construction outside the zone of natural vegetation will inevitably cause degradation (the commission's word) in the zone. *Second,* there is nothing in the by-laws (or the regulations) that authorizes the commission to withhold an order of conditions because of injury to the zone of natural vegetation, which is established precisely to act as a *buffer* (in the language of the regulation) between the area of allowable construction and the wetland. The very purpose of a buffer is to absorb impact or moderate adverse influences. In this respect, the Reading by-law is unlike the one we considered in *T.D.J. Dev. Corp.* v. *Conservation Commn. of N. Andover,* 36 Mass. App. Ct. at 126-127; that by-law directly regulated activity in the 100-foot buffer zone created under 310 Code Mass. Regs. § 10.02(1) and (2) (1989). In the Reading by-law there is no comparable zone of prohibition and, therefore, the commission lacks authority to deny a permit because of potential or secondary impact on the zone of natural vegetation buffer. There is no finding or prediction that such impact, even if it occurred, would in turn have any effect on the protected wetland.

The commission finds support in the sentence of the zone of natural vegetation regulation that says, *"Under most circumstances,* a zone width of 25 feet would be considered sufficient to accomplish this purpose" (emphasis supplied). The three italicized words, the commission argues, establish its authority to establish a zone wider than 25 feet. Assuming that grant of discretionary authority, one might well question whether a wider zone can be created as to a particular lot. The dispositive point, however, is that the board did not create a zone of natural vegetation adjoining the locus wider than the standard 25 feet.

In addition, the commission grounded its decision on several other criteria for which there is no basis in the by-laws or the rules and regulations. 1) Although the owner's submission accepted a condition of no use of the zone of natural vegetation, the commission anticipated that condition would be violated. The commission appeared to treat the project as

if the rear house line ran parallel and right up to the edge of the zone of natural vegetation. In point of fact (see sketch), the proposed house comes up to the zone line only at three points. There is, thus, room to place ladders, dig trenches, and so forth on land outside of the protected zone. 2) Without explanation, the commission concluded that certain protective measures which it had called for along the border of the zone of natural vegetation such as double-staked hay bales and a filter fence, would, in the end, prove insufficient. 3) On the basis of work done by the Fafard company, operated by the plaintiff's husband, on a nearby condominium, the commission presumed invasions of the zone of natural vegetation would occur. 4) The commission determined that the spirit and intent of the by-laws were not served by dedication of so much land to a driveway, although that use violates no zoning by-law provision or wetland by-law provision.

Prior violations or prospective violations of a town by-law are not a legally tenable ground for denial of a submission that on its face complies with applicable law. See *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 157 (1977); *Fitzsimonds* v. *Zoning Bd. of Appeals of Chatham*, 21 Mass. App. Ct. 53, 57 (1985); *Solar* v. *Zoning Bd. of Appeals of Lincoln*, 33 Mass. App. Ct. 398, 402 (1992). We said in *Dowd, supra* at 157, that when the local board grounded its consideration upon the plaintiff's prior zoning violations, it exceeded legitimate authority. We went on to observe that "[t]o the extent that an enforcement problem may be created, an adequate remedy has been provided by [statute]." In the instant case, both the by-laws and G. L. c. 131, § 40, contain enforcement provisions.

It is difficult to avoid the conclusion that the commission, faced with a proposal that was not popular in the neighborhood, was determined to find reasons to deny an order of conditions for that project, even if State and local requirements were met. On appeal, counsel for the commission ascribed to "obvious typographical error," the statement of the commission in its decision of May 29, 1991, that the work could be "adequately conditioned to protect the interests of the Wetlands Protection Act, c. 131, s. 40 and the Reading General Bylaws, Section 5.7." The collateral reasons that the commission offered for denying the order of conditions, based on neither State nor local statute, suggest the commission said what it meant.

Although the commission is entitled to all rational presumptions in favor of its interpretation of its own by-law, there must be a rational relation between its decision and the purpose of the regulations it is charged with enforcing. Compare *National Amusements, Inc.* v. *Boston*, 29 Mass. App. Ct. at 305; *Hamel* v. *Board of Health of Edgartown*, 40 Mass. App. Ct. 420, 423 (1996). "[T]he applicable principles are of judicial deference and restraint, not abdication." *National Amusements, Inc.* v. *Boston, supra* at 310. See also *Quincy* v. *Massachusetts Water Resources Authy.*, 421 Mass. 463, 468 (1995). The commission failed to state a legally tenable ground for its denial of the property owner's proposal. The criteria it applied were devised for the occasion, rather than of uniform applicability. Thus flawed, the commission's decision was arbitrary.

The judgment is reversed, and a judgment shall be entered remanding the case to the commission, which is to issue an order of conditions authorizing construction in accordance with the other portions of the commission's decision of May 29, 1991.

*So ordered.*